In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2997

JACOB LEWIS,

*Plaintiff-Appellee,*

*v.*

EPIC SYSTEMS CORPORATION,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 15-cv-82-bbc — **Barbara B. Crabb**, *Judge.*

ARGUED FEBRUARY 12, 2016 — DECIDED MAY 26, 2016

Before WOOD, *Chief Judge*, ROVNER, *Circuit Judge*, and
BLAKEY, *District Judge*.[*]

WOOD, *Chief Judge*. Epic Systems, a health care software
company, required certain groups of employees to agree to
bring any wage-and-hour claims against the company only
through individual arbitration. The agreement did not permit

---

[*] Of the Northern District of Illinois, sitting by designation.

collective arbitration or collective action in any other forum. We conclude that this agreement violates the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151, *et seq*., and is also unenforceable under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, *et seq*. We therefore affirm the district court's denial of Epic's motion to compel arbitration.

**I**

On April 2, 2014, Epic Systems sent an email to some of its employees. The email contained an arbitration agreement mandating that wage-and-hour claims could be brought only through individual arbitration and that the employees waived "the right to participate in or receive money or any other relief from any class, collective, or representative proceeding." The agreement included a clause stating that if the "Waiver of Class and Collective Claims" was unenforceable, "any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction." It also said that employees were "deemed to have accepted this Agreement" if they "continue[d] to work at Epic." Epic gave employees no option to decline if they wanted to keep their jobs. The email requested that recipients review the agreement and acknowledge their agreement by clicking two buttons. The following day, Jacob Lewis, then a "technical writer" at Epic, followed those instructions for registering his agreement.

Later, however, Lewis had a dispute with Epic, and he did not proceed under the arbitration clause. Instead, he sued Epic in federal court, contending that it had violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.* and Wisconsin law by misclassifying him and his fellow technical writers and thereby unlawfully depriving them of overtime

pay. Epic moved to dismiss Lewis's claim and compel individual arbitration. Lewis responded that the arbitration clause violated the NLRA because it interfered with employees' right to engage in concerted activities for mutual aid and protection and was therefore unenforceable. The district court agreed and denied Epic's motion. Epic appeals, arguing that the district court erred in declining to enforce the agreement under the FAA. We review *de novo* a district court's decision to deny a motion to compel arbitration. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012).

## II

### A

Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 enforces Section 7 unconditionally by deeming that it "shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." *Id.* § 158(a)(1). The National Labor Relations Board is "empowered ... to prevent any person from engaging in any unfair labor practice ... affecting commerce." *Id.* § 160(a).

Contracts "stipulat[ing] ... the renunciation by the employees of rights guaranteed by the [NLRA]" are unlawful and may be declared to be unenforceable by the Board. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 365 (1940) ("[I]t will not be open to any tribunal to compel the employer to perform the acts, which, even though he has bound himself by contract to do

them, would violate the Board's order or be inconsistent with any part of it[.]"); *J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944) ("Wherever private contracts conflict with [the Board's] functions, they obviously must yield or the [NLRA] would be reduced to a futility."). In accordance with this longstanding doctrine, the Board has, "from its earliest days," held that "employer-imposed, individual agreements that purport to restrict Section 7 rights" are unenforceable. *D. R. Horton, Inc.*, 357 N.L.R.B. No. 184 at *5 (2012) (collecting cases as early as 1939), *enf'd in part and granted in part*, *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013). It has done so with "uniform judicial approval." *Id.* (citing as examples *NLRB v. Vincennes Steel Corp.*, 117 F.2d 169, 172 (7th Cir. 1941), *NLRB v. Jahn & Ollier Engraving Co.*, 123 F.2d 589, 593 (7th Cir. 1941), and *NLRB v. Adel Clay Products Co.*, 134 F.2d 342 (8th Cir. 1943)).

Section 7's "other concerted activities" have long been held to include "resort to administrative and judicial forums." *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978) (collecting cases). Similarly, both courts and the Board have held that filing a collective or class action suit constitutes "concerted activit[y]" under Section 7. See *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011) ("[A] lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment *is* 'concerted activity' under § 7 of the National Labor Relations Act."); *Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295, 297 (5th Cir. 1976) (same); *Leviton Mfg. Co. v. NLRB*, 486 F.2d 686, 689 (1st Cir. 1973) (same); *Mohave Elec. Co-op., Inc. v. NLRB*, 206 F.3d 1183, 1189 (D.C. Cir. 2000) (single employee's filing of a judicial petition constituted "concerted action" under NLRA where "supported by fellow employees"); *D. R. Horton*, 357 N.L.R.B. No. 184, at *2 n.4 (collecting cases). This precedent is in line with the Supreme Court's rule

recognizing that even when an employee acts alone, she may "engage in concerted activities" where she "intends to induce group activity" or "acts as a representative of at least one other employee." *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 831 (1984).

Section 7's text, history, and purpose support this rule. In evaluating statutory language, a court asks first "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 676 F.3d 566, 570 (7th Cir. 2012). In doing so, it "giv[es] the words used their ordinary meaning." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1165 (2014) (internal citation omitted). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

The NLRA does not define "concerted activities." The ordinary meaning of the word "concerted" is: "jointly arranged, planned, or carried out; coordinated." *Concerted*, NEW OXFORD AMERICAN DICTIONARY 359 (3d ed. 2010). Activities are "thing[s] that a person or group does or has done" or "actions taken by a group in order to achieve their aims." *Id*. at 16. Collective or class legal proceedings fit well within the ordinary understanding of "concerted activities."

The NLRA's history and purpose confirm that the phrase "concerted activities" in Section 7 should be read broadly to include resort to representative, joint, collective, or class legal remedies. (There is no hint that it is limited to actions taken by a formally recognized union.) Congress recognized that, before the NLRA, "a single employee was helpless in dealing

with an employer," and "that union was essential to give laborers opportunity to deal on an equality with their employer." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937). In enacting the NLRA, Congress's purpose was to "to equalize the bargaining power of the employee with that of his employer by allowing employees to band together in confronting an employer regarding the terms and conditions of their employment." *City Disposal Systems*, 465 U.S. at 835. Congress gave "no indication that [it] intended to limit this protection to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way." *Id.*

Collective, representative, and class legal remedies allow employees to band together and thereby equalize bargaining power. See *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action procedure allows plaintiffs who would otherwise "have no realistic day in court" to enforce their rights); Harry Kalven, Jr. & Maurice Rosenfield, *The Contemporary Function of the Class Suit*, 8 U. CHI. L. REV. 684, 686 (1941) (noting that class suits allow those "individually in a poor position to seek legal redress" to do so, and that "an effective and inclusive group remedy" is necessary to ensure proper enforcement of rights). Given Section 7's intentionally broad sweep, there is no reason to think that Congress meant to exclude collective remedies from its compass.

Straining to read the term through our most Epic-tinted glasses, "concerted activity" might, at the most, be read as ambiguous as applied to collective lawsuits. But even if Section 7 *were* ambiguous—and it is not—the Board, in accordance with the reasoning above, has interpreted Sections 7 and

8 to prohibit employers from making agreements with individual employees barring access to class or collective remedies. See *D. R. Horton*, 357 N.L.R.B. No. 184, at *5. The Board's interpretations of ambiguous provisions of the NLRA are "entitled to judicial deference." *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536 (1992). This Court has held that the Board's views are entitled to *Chevron* deference, see *Int'l Ass'n of Machinists & Aerospace Workers v. NLRB*, 133 F.3d 1012, 1015 (7th Cir. 1998), and the Supreme Court has repeatedly cited *Chevron* in describing its deference to the NLRB's interpretation of the NLRA, see, *e.g.*, *Lechmere*, 502 U.S. at 536; *NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 123 (1987). The Board's interpretation is, at a minimum, a sensible way to understand the statutory language, and thus we must follow it.

Epic argues that because the Rule 23 class action procedure did not exist in 1935, when the NLRA was passed, the Act could not have been meant to protect employees' rights to class remedies. See FED. R. CIV. P. 23 (Committee Notes describing the initial 1937 version of the rule and later amendments). We are not persuaded. First, by protecting not only employees' "right to self-organization, to form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing" but also "*other* concerted activities for the purpose of ... other mutual aid or protection," Section 7's text signals that the activities protected are to be construed broadly. 29 U.S.C. § 157 (emphasis added); see *City Disposal Systems*, 465 U.S. at 835. There is no reason to think that Congress intended the NLRA to protect only "concerted activities" that were available at the time of the NLRA's enactment.

Second, the contract here purports to address *all* collective or representative procedures and remedies, not just class actions. Rule 23 may have been yet to come at the time of the NLRA's passage, but it was not written on a clean slate. Other class and collective procedures had existed for a long time on the equity side of the court: permissive joinder of parties, for instance, had long been part of Anglo-American civil procedure and was encouraged in 19th-century federal courts. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 7 FEDERAL PRACTICE AND PROCEDURE § 1651 (3d ed. 2015) (noting that federal equity courts encouraged permissive joinder of parties as early as 1872). As early as 1853, it was "well established" that representative suits were appropriate "where the parties interested are numerous, and the suit is for an object common to them all." *Smith v. Swormstedt*, 57 U.S. 288, 302 (1853) (allowing representative suit on behalf of more than 1,500 Methodist preachers). In fact, representative and collective legal procedures have been employed since the medieval period. See STEPHEN C. YEAZELL, FROM MEDIEVAL GROUP LITIGATION TO THE MODERN CLASS ACTION 38 (1987) (discussing group litigation in England occurring as early as 1199 C.E.). The FLSA itself provided for collective and representative actions when it was passed in 1938. See, *e.g.*, *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 390 n.3 (1942) (allowing suits by employees on behalf of "him or themselves and other employees similarly situated" (quoting FLSA, 29 U.S.C. § 216(b))).

Congress was aware of class, representative, and collective legal proceedings when it enacted the NLRA. The plain language of Section 7 encompasses them, and there is no evidence that Congress intended them to be excluded. Section 7's

plain language controls, *GTE Sylvania*, 447 U.S. at 108, and protects collective legal processes. Along with Section 8, it renders unenforceable any contract provision purporting to waive employees' access to such remedies.

B

The question thus becomes whether Epic's arbitration provision impinges on "Section 7 rights." The answer is yes.

In relevant part, the contract states "that covered claims will be arbitrated only on an individual basis," and that employees "waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding." It stipulates that "[n]o party may bring a claim on behalf of other individuals, and any arbitrator hearing [a] claim may not: (i) combine more than one individual's claim or claims into a single case; (ii) participate in or facilitate notification of others of potential claims; or (iii) arbitrate any form of a class, collective or representative proceeding." It notes that "covered claims" include any "claimed violation of wage-and-hour practices or procedures under local, state, or federal statutory or common law." It thus combines two distinct rules: first, any wage-and-hour dispute must be submitted to arbitration rather than pursued in court; and second, no matter where the claim is brought, the plaintiff may not take advantage of any collective procedures available in the tribunal.

Insofar as the second aspect of its provision is concerned, Epic's clause runs straight into the teeth of Section 7. The provision prohibits any collective, representative, or class legal proceeding. Section 7 provides that "[e]mployees shall have the right to ... engage in ... concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29

U.S.C. § 157. A collective, representative, or class legal proceeding is just such a "concerted activit[y]." See *Eastex*, 437 U.S. at 566; *Brady*, 644 F.3d at 673; *D. R. Horton*, 357 N.L.R.B. No. 184, at *2–3. Under Section 8, any employer action that "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of the rights guaranteed in [Section 7]" constitutes an "unfair labor practice." 29 U.S.C. § 158(a)(1). Contracts that stipulate away employees' Section 7 rights or otherwise require actions unlawful under the NRLA are unenforceable. See *Nat'l Licorice Co.*, 309 U.S. at 361; *D. R. Horton*, 357 N.L.R.B. No. 184, at *5.

We are aware that the circuits have some differences of opinion in this area, although those differences do not affect our analysis here. The Ninth Circuit has held that an arbitration agreement mandating individual arbitration may be enforceable where the employee had the right to opt out of the agreement without penalty, reasoning that the employer therefore did not "interfere with, restrain, or coerce" her in violation of Section 8. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1077 (9th Cir. 2014). The Ninth Circuit's decision in *Johnmohammadi* conflicts with a much earlier decision from this court, which held that contracts between employers and individual employees that stipulate away Section 7 rights necessarily interfere with employees' exercise of those rights in violation of Section 8. See *NLRB v. Stone*, 125 F.2d 752, 756 (7th Cir. 1942). *Stone*, which has never been undermined, held that where the "employee was obligated to bargain individually," an arbitration agreement limiting Section 7 rights was a *per se* violation of the NLRA and could not "be legalized by showing the contract was entered into without coercion." *Id.* ("This is the very antithesis of collective bargaining." (citing *NLRB v. Superior Tanning Co.*, 117 F.2d 881, 890 (7th Cir.

1940))). The Board has long held the same. See *D.R. Horton*, 357 N.L.R.B. No. 184, at *5–7 (citing *J. H. Stone & Sons*, 33 N.L.R.B. 1014 (1941) and *Superior Tanning Co.*, 14 N.L.R.B. 942 (1939)). (In *Johnmohammadi*, the Ninth Circuit, without explanation, did not defer to the Board.) We have no need to resolve these differences today, however, because in our case, it is undisputed that assent to Epic's arbitration provision was a condition of continued employment. A contract that limits Section 7 rights that is agreed to as a condition of continued employment qualifies as "interfer[ing] with" or "restrain[ing] ... employees in the exercise" of those rights in violation of Section 8(a)(1). 29 U.S.C. § 157(a)(1).

In short, Sections 7 and 8 of the NLRA render Epic's arbitration provision unenforceable. Even if this were not the case, the Board has found that substantively identical arbitration agreements, agreed to under similar conditions, violate Sections 7 and 8. See *D. R. Horton*, 357 N.L.R.B. No. 184; *Murphy Oil USA, Inc.*, 361 N.L.R.B. No. 72 (2014), *enf'd in part and granted in part*, *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015). We conclude that, insofar as it prohibits collective action, Epic's arbitration provision violates Sections 7 and 8 of the NLRA.

### III

That would be all that needs to be said, were it not for the Federal Arbitration Act. Epic argues that the FAA overrides the labor law doctrines we have been discussing and entitles it to enforce its arbitration clause in full. Looking at the arbitration agreement, it is not clear to us that the FAA has anything to do with this case. The contract imposes two rules: (1) no collective action, and (2) proceed in arbitration. But it does not stop there. It also states that if the collective-action waiver

is unenforceable, then any collective claim must proceed in court, not arbitration. Since we have concluded in Part II of this opinion that the collective-action waiver is incompatible with the NLRA, we could probably stop here: the contract itself demands that Lewis's claim be brought in a court. Epic, however, contends that we should ignore the contract's saving clause because the FAA trumps the NLRA. In essence, Epic says that even if the NLRA killed off the collective-action waiver, the FAA resuscitates it, and along with it, the rest of the arbitration apparatus. We reject this reading of the two laws.

In relevant part, the FAA provides that any written contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enacted in "response to judicial hostility to arbitration," *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 668 (2012), its purpose was "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). Federal statutory claims are just as arbitrable as anything else, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit*, 132 S. Ct. at 669 (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). The FAA's "saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses,' ... but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563

U.S. 333, 339 (2011) (quoting *Doctor's Associates, Inc. v. Casa-rotto*, 517 U.S. 681, 687 (1996)).

Epic argues that the NLRA contains no "contrary congressional command" against arbitration, and that the FAA therefore trumps the NLRA. But this argument puts the cart before the horse. Before we rush to decide whether one statute eclipses another, we must stop to see if the two statutes conflict at all. See *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995). In order for there to be a conflict between the NLRA as we have interpreted it and the FAA, the FAA would have to mandate the enforcement of Epic's arbitration clause. As we now explain, it does not.

A

Epic must overcome a heavy presumption to show that the FAA clashes with the NLRA. "[W]hen two statutes are capable of co-existence ... it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Vimar Seguros*, 515 U.S. at 533 (applying canon to find FAA compatible with other statute) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). Moreover, "[w]hen two statutes complement each other"—that is, "each has its own scope and purpose" and imposes "different requirements and protections"—finding that one precludes the other would flout the congressional design. *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2238 (2014) (internal citations omitted). Courts will harmonize overlapping statutes "so long as each reaches some distinct cases." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001). Implied repeal should be found only when there is an "'irreconcilable conflict' between the two federal statutes at issue." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 381

(1996) (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 468 (1982)).

Epic has not carried that burden, because there is no conflict between the NLRA and the FAA, let alone an irreconcilable one. As a general matter, there is "no doubt that illegal promises will not be enforced in cases controlled by the federal law." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982). The FAA incorporates that principle through its saving clause: it confirms that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Illegality is one of those grounds. See *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (noting that illegality is a ground preventing enforcement under § 2). The NLRA prohibits the enforcement of contract provisions like Epic's, which strip away employees' rights to engage in "concerted activities." Because the provision at issue is unlawful under Section 7 of the NLRA, it is illegal, and meets the criteria of the FAA's saving clause for nonenforcement. Here, the NLRA and FAA work hand in glove.

B

In *D.R. Horton, Inc. v. NLRB*, the Fifth Circuit came to the opposite conclusion.[†] 737 F.3d at 357. Drawing from dicta that first appeared in *Concepcion*, 563 U.S. at 348, and was then repeated in *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310 (2013), the Fifth Circuit reasoned that because class arbitration sacrifices arbitration's "principal advantage"

---

[†] Because this opinion would create a conflict in the circuits, we have circulated it to all judges in active service under Circuit Rule 40(e). No judge wished to hear the case en banc.

of informality, "makes the process slower, more costly, and more likely to generate procedural morass than final judgment," "greatly increases risks to defendants," and "is poorly suited to the higher stakes of class litigation," the "effect of requiring class arbitration procedures is to disfavor arbitration." *D.R. Horton*, 737 F.3d at 359 (quoting *Concepcion*, 563 U.S. at 348–52); see also *Italian Colors*, 133 S. Ct. at 2312. The Fifth Circuit suggested that because the FAA "embod[ies] a national policy favoring arbitration and a liberal federal policy favoring arbitration agreements," *Concepcion*, 563 U.S. at 346 (internal quotation marks and citations omitted), any law that even incidentally burdens arbitration—here, Section 7 of the NLRA—necessarily conflicts with the FAA. See *D.R. Horton*, 737 F.3d at 360 ("Requiring a class mechanism is an actual impediment to arbitration and violates the FAA. The saving clause is not a basis for invalidating the waiver of class procedures in the arbitration agreement.").

There are several problems with this logic. First, it makes no effort to harmonize the FAA and NLRA. When addressing the interactions of federal statutes, courts are not supposed to go out *looking* for trouble: they may not "pick and choose among congressional enactments." *Morton*, 417 U.S. at 551. Rather, they must employ a strong presumption that the statutes may both be given effect. See *id.* The savings clause of the FAA ensures that, at least on these facts, there is no irreconcilable conflict between the NLRA and the FAA.

Indeed, finding the NLRA in conflict with the FAA would be ironic considering that the NLRA is in fact *pro*-arbitration: it expressly allows unions and employers to arbitrate disputes between each other, see 29 U.S.C. § 171(b), and to negotiate collective bargaining agreements that require employees to

arbitrate individual employment disputes. See *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257-58 (2009); *City Disposal Systems*, 465 U.S. at 836–37. The NLRA does not disfavor arbitration; in fact, it is entirely possible that the NLRA would not bar Epic's provision if it were included in a collective bargaining agreement. See *City Disposal Systems*, 465 U.S. at 837. ("[I]f an employer does not wish to tolerate certain methods by which employees invoke their collectively bargained rights, [it] is free to negotiate a provision in [its] collective-bargaining agreement that limits the availability of such methods."). If Epic's provision had permitted collective arbitration, it would not have run afoul of Section 7 either. But it did not, and so it ran up against the substantive right to act collectively that the NLRA gives to employees.

Neither *Concepcion* nor *Italian Colors* goes so far as to say that *anything* that conceivably makes arbitration less attractive automatically conflicts with the FAA, nor does either case hold that an arbitration clause automatically precludes collective action even if it is silent on that point. In *Concepcion*, the Supreme Court found incompatible with the FAA a state law that declared arbitration clauses to be unconscionable for low-value consumer claims. See *Concepcion*, 563 U.S. at 340. The law was directed toward arbitration, and it was hostile to the process. Here, we have nothing of the sort. Instead, we are reconciling two federal statutes, which must be treated on equal footing. The protection for collective action found in the NLRA, moreover, extends far beyond collective litigation or arbitration; it is a general principle that affects countless aspects of the employer/employee relationship.

This case is actually the inverse of *Italian Colors*. There the plaintiffs argued that requiring them to litigate individually

"contravene[d] the policies of the antitrust laws." 133 S. Ct. at 2309. The Court rejected this argument, noting that "the antitrust laws do not guarantee an affordable procedural path to the vindication of every claim." With regard to the enforcement of the antitrust laws, the Court commented that "no legislation pursues its purposes at all costs." *Id.* (quoting *Rodriguez v. United States*, 480 U.S. 522, 525–526 (1987) (per curiam)). In this case, the shoe is on the other foot. The FAA does not "pursue its purposes at all costs"—that is why it contains a saving clause. *Id.* If these statutes are to be harmonized—and according to all the traditional rules of statutory construction, they must be—it is through the FAA's saving clause, which provides for the very situation at hand. Because the NLRA renders Epic's arbitration provision illegal, the FAA does not mandate its enforcement.

We add that even if the dicta from *Concepcion* and *Italian Colors* lent itself to the Fifth Circuit's interpretation, it would not apply here: Sections 7 and 8 do not mandate class arbitration. Indeed, they say nothing about class arbitration, or even arbitration generally. Instead, they broadly restrain *employers* from interfering with employees' engaging in concerted activities. See 29 U.S.C. §§ 157, 158. Sections 7 and 8 stay *Epic's* hand. (This is why, in addition to its being waived, Epic's argument that Lewis relinquished his Section 7 rights fails.) Epic acted unlawfully in attempting to contract with Lewis to waive his Section 7 rights, regardless of whether Lewis agreed to that contract. The very formation of the contract was illegal. See *Italian Colors*, 133 S. Ct. at 2312 (Thomas, J., concurring) (noting, in adopting the narrowest characterization of the FAA's saving clause of any Justice, that defenses to contract formation block an order compelling arbitration under FAA).

Finally, finding the NLRA in conflict with the FAA would render the FAA's saving clause a nullity. See *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (noting the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant"). Illegality is a standard contract defense contemplated by the FAA's saving clause. See *Buckeye Check Cashing*, 546 U.S. at 444. If the NLRA does not render an arbitration provision sufficiently illegal to trigger the saving clause, the saving clause does not mean what it says.

Epic warns us against creating a circuit split, noting that at least two circuits agree with the Fifth. See *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013) (rejecting argument that there is inherent conflict between NLRA/Norris LaGuardia Act and FAA); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013) (rejecting NLRA-based argument without analysis); *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 n.3 (9th Cir. 2013) (noting "[w]ithout deciding the issue" that a number of courts have "determined that they should not defer to the NLRB's decision in *D.R. Horton*"). Of these courts, however, none has engaged substantively with the relevant arguments.

The FAA contains a general policy "favoring arbitration and a liberal federal policy favoring arbitration agreements." *Concepcion*, 563 U.S. at 346 (internal quotation marks and citations omitted). Its "substantive command" is "that arbitration agreements be treated like all other contracts." See *Buckeye Check Cashing*, 546 U.S. at 447. Its purpose is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint*, 388 U.S. at 404 n.12 (holding that FAA's

saving clause prevents enforcement of both void and voidable arbitration contracts). "To immunize an arbitration agreement from judicial challenge on" a traditional ground such as illegality "would be to elevate it over other forms of contract—a situation inconsistent with the 'saving clause.'" *Id.* (applying same principle to fraud in the inducement). The FAA therefore renders Epic's arbitration provision unenforceable.

C

Last, Epic contends that even if the NLRA does protect a right to class or collective action, any such right is procedural only, not substantive, and thus the FAA demands enforcement. The right to collective action in section 7 of the NLRA is not, however, merely a procedural one. It instead lies at the heart of the restructuring of employer/employee relationships that Congress meant to achieve in the statute. See *Allen-Bradley Local No. 1111, United Elec., Radio & Mach. Workers of Am. v. Wis. Employ't Relations Bd.*, 315 U.S. 740, 750 (1942) ("[Section 7] guarantees labor its 'fundamental right' to self-organization and collective bargaining." (quoting *Jones & Laughlin Steel*, 301 U.S. 1, 33)); *D. R. Horton*, 357 N.L.R.B. No. 184, at *12 (noting that the Section 7 right to concerted action "is the core substantive right protected by the NLRA and is the foundation on which the Act and Federal labor policy rest"). That Section 7's rights are "substantive" is plain from the structure of the NLRA: Section 7 is the NLRA's *only* substantive provision. Every other provision of the statute serves to enforce the rights Section 7 protects. Compare 29 U.S.C. § 157 with *id.* §§ 151–169. One of those rights is "to engage in ... concerted activities for the purpose of collective bargaining or other mutual aid or protection," *id*. § 157; "concerted activities" include

collective, representative, and class legal proceedings. See *Eastex*, 437 U.S. at 566; *Brady*, 644 F.3d at 673; *D. R. Horton*, 357 N.L.R.B. No. 184, at *2–3.

The Supreme Court has held that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). (Contrary to the Fifth Circuit's assertion in *D.R. Horton*, the Supreme Court has never held that arbitration does not "deny a party any statutory right." 737 F.3d at 357.)

Arbitration agreements that act as a "prospective waiver of a party's *right to pursue* statutory remedies"—that is, of a substantive right—are not enforceable. *Italian Colors*, 133 S. Ct. at 2310 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19). Courts routinely invalidate arbitration provisions that interfere with substantive statutory rights. See, *e.g.*, *McCaskill v. SCI Mgmt. Corp.*, 285 F.3d 623, 626 (7th Cir. 2002) (holding unenforceable arbitration agreement that did not provide for award of attorney fees in accordance with right guaranteed by Title VII); *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (holding unenforceable arbitration provision precluding treble damages available under federal antitrust law); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005) (holding unenforceable and severing clause in arbitration agreement proscribing exemplary and punitive damages available under Title VII); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) (same); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670 (6th Cir. 2003) (holding unenforceable arbitra-

tion agreement that limited remedies under Title VII); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (same).

Epic pushes back with three arguments, but none changes the result. It points out the Federal Rule of Civil Procedure 23 simply creates a procedural device. We have no quarrel with that, but Epic forgets that its clause also prohibits the employees from using *any* collective device, whether in arbitration, outside of any tribunal, or litigation. Rule 23 is not the source of the collective right here; Section 7 of the NLRA is. Epic also notes that courts have held that other employment statutes that provide for Rule 23 class actions do not provide a substantive right to a class action. See, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (Age Discrimination in Employment Act (ADEA)); *D.R. Horton*, 737 F.3d at 357 (citing court of appeals cases for FLSA). It bears repeating: just as the NLRA is not Rule 23, it is not the ADEA or the FLSA. While the FLSA and ADEA allow class or collective actions, they do not guarantee collective process. See 29 U.S.C. §§ 216(b), 626. The NLRA does. See *id.* § 157. Epic's third argument is that because Section 7 deals with *how* workers pursue their grievances—through concerted action—it must be procedural. But just because the Section 7 right is associational does not mean that it is not substantive. It would be odd indeed to consider associational rights, such as the one guaranteed by the First Amendment to the U.S. Constitution, nonsubstantive. Moreover, if Congress had meant for Section 7 to cover only "concerted activities" related to collective bargaining, there would have been no need for it to protect employees' "right to ... engage in other concerted activities for the purpose of collective bargaining *or other mutual aid or protection*." 29 U.S.C. § 157 (emphasis added).

**IV**

Because it precludes employees from seeking any class, collective, or representative remedies to wage-and-hour disputes, Epic's arbitration provision violates Sections 7 and 8 of the NLRA. Nothing in the FAA saves the ban on collective action. The judgment of the district court is therefore AFFIRMED.