**Horace LEE and Imran Sandozi, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**UBER TECHNOLOGIES, INC. and Raiser, LLC, Defendants.**

No. 15 C 11756

United States District Court, N.D. Illinois, Eastern Division.

Signed 09/21/2016

Brittany Sloane Weiner, Imbesi Law PC, Paul Brian Maslo, Salvatore Charles Badala, Napoli Shkolnik PLLC, New York, NY, Jovan Radomia Ostojic, Ostojic & Scudder, LLC, Chicago, IL, for Plaintiffs.

James J. Oh, Todd M. Church, Littler Mendelson, P.C., Chicago, IL, Andrew Michael Spurchise, Littler Mendelson, PC, New York, NY, for Defendants.

### REVISED ORDER

John J. Tharp, Jr., United States District Judge

The defendants' motion to compel arbitration and to dismiss the action [9] is granted in part and denied in part. For the reasons stated below, the plaintiffs' claims must be submitted to arbitration; pending arbitration, this matter is stayed. Plaintiffs

are directed to notify the Court within 14 days of the issuance of any arbitration award or other action that terminates the arbitration proceedings or otherwise concludes this matter.

## STATEMENT

The plaintiffs, Horace Lee and Imran Sandozi, bring this action on behalf of themselves and all other similarly situated persons working as drivers in Illinois for the defendants Uber Technologies, Inc. and Rasier, LLC (referred to collectively as "Uber").[1] The plaintiffs assert a number of state law claims against the defendants, including tortious interference with prospective business relations, breach of contract, unjust enrichment, unfair competition, fraud and misrepresentation, and violations of various Illinois labor laws. *See* Compl., ECF No. 1. Before the Court is Uber's motion to compel arbitration of these claims pursuant to 9 U.S.C. §§ 3-4 and to dismiss under Rule 12(b)(1) and 12(b)(6). ECF No. 9.

## BACKGROUND [2]

Uber Technologies is a technology company that offers a smartphone application to connect riders looking for transportation to independent drivers. Mem. in Supp. 2, ECF No. 10. Uber Technologies licenses its applications, including a platform called uberX, to independent drivers like the plaintiffs. *Id.* at 2–3. Rasier is a wholly owned subsidiary of .Uber Technologies that provides "lead generation services" to independent drivers though the uberX platform. *Id.* at 3. To have access to the uberX platform, independent drivers must enter into an agreement with Rasier. *Id.*

Upon the initial logon to the uberX application, the driver has the opportunity to review the Rasier Software License & Online Services Agreement ("Agreement")[3] by clicking a hyperlink within the application. *Id.* To advance past the screen displaying the hyperlink to the Agreement, the driver has to consent to reviewing the agreement and has to click, "YES, I AGREE" to the terms of the Agreement. *Id*; Ex. A. After the initial acceptance, the driver is again prompted to confirm his review and acceptance of the Agreement a second time. Mem. in Supp. 3; Ex. B. After confirming acceptance a second time, the Agreement is immediately sent to each driver's portal, where the driver can access the agreement to review, either online on any device or by printing a copy. Mem. in Supp. 4.

The Agreement contains an arbitration provision (the "Arbitration Provision") which provides, in relevant part:

> IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber. It also precludes you

---

**1.** The plaintiffs misspelled Rasier in the Complaint as "Raiser." *See* Mt. Compel Arb. and Dismiss 1 n.1, ECF No. 9.

**2.** In addition to the pleadings, the Court may consider exhibits and affidavits regarding the arbitration agreement in question. *See, e.g., Traeger v. Am. Express Bank FSB,* No. 13 C 05337, 2014 WL 340421, at *1 n. 1 (N.D.Ill. Jan. 30, 2014); *Corrigan v. Domestic Linen Supply Co.,* No. 12 C 0575, 2012 WL 2977262, at *1 (N.D.Ill. July 20, 2012).

**3.** The language quoted from the Agreement is taken from the November 10, 2014 version. There are a number of relatively minor differences in the December 11, 2015 version, none of which affect the outcome of this motion. *Compare* Mem. in Supp. Ex. C *with* Ex. G.

from participating in or recovering relief under any current or future class, collective, or representative action brought against the Company or Uber by someone else.

\* \* \*

**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

Mem. in Supp. Ex. C ¶ 15.3 (emphasis in original).[4]

The Arbitration Provision also contains what is known as a "delegation clause"—a provision that delegates the authority to determine threshold issues of arbitrability to an arbitrator. *See Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 68–69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). The delegation clause states:

Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Ar-

bitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

*Id.* ¶ 15.3.i.

Finally, as relevant to this case, the Arbitration Provision also includes a section entitled "Your Right To Opt Out Of Arbitration," which provides:

**Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber. com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (*e.g.,* UPS, Federal Express, etc.), or by hand delivery to: [Rasier's legal department]. . . . Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms**

---

4. The front page of the Agreement also contains a notice in bold, all capitals, and a larger font, which reads:

IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF

YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.

Mem. in Supp. Ex. C (emphasis in original).

**of this Arbitration Provision.... You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

*Id.* ¶ 15.3.viii (emphasis in original).

Plaintiff Sandozi signed up to use the uberX platform and activated his account on July 24, 2014. Mem. in Supp. 3. Sandozi initially accepted a version of the Agreement dated June 20, 2014. *Id.* On August 21, 2015, he accepted an updated version dated November 10, 2014.[5] *Id.* at 3–4. Plaintiff Lee signed up to use the uberX platform and activated his account on April 9, 2015. *Id.* at 3. He accepted the November 10, 2014 Agreement on April 10, 2015 and again on June 22, 2015. *Id.* at 4.

In response to litigation against Uber in California, *see O'Connor v. Uber Technologies, Inc.*, No. 13–cv–03826, Uber attempted to circulate an updated Agreement on December 11, 2015.[6] *See* Mem. in Supp. Ex. G. Sandozi sent an email to optout@ uber.com requesting to opt out of this version of the Arbitration Provision on December 21, 2015; Lee emailed requesting to opt out on December 22, 2015. Compl. ¶¶ 25-26. Neither plaintiff, however, had accepted the December 11, 2015 Agreement at the time they sent emails to opt out of its Arbitration Provision; Lee accepted the December 11, 2015 Agreement on January 4, 2016, and Sandozi accepted

on January 14, 2016. *See* Mem. in Supp. Exs. D, F; Reply 3. In the meantime, on December 29, 2015, Lee and Sandozi filed this seven-count class action complaint on behalf of all former and current Uber drivers in Illinois.

## DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, states that, as a matter of federal law, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act further requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4. To compel arbitration under the FAA, this Court must find (1) that a written arbitration agreement exists between the parties; (2) that there is a dispute among the parties within the scope of the arbitration agreement; and (3) that one of the parties is refusing to comply with the arbitration agreement by declining to participate in arbitration. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir.2005). In interpreting the breadth and viability of an arbitration provision, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Sol-*

5. The parties do not explain why the plaintiffs were required to sign the various updated versions nor do they explain the specific updates included in each subsequent version of the Agreement.

6. The District Court in the Northern District of California held that Uber cannot enforce the Arbitration Provision in the December 11, 2015 Agreement until a number of conditions are met. *See O'Connor v. Uber Technologies, Inc.*, No. 13–cv–03826, ECF No. 435 6-8.

Uber has appealed this ruling to the Ninth Circuit. *See* Reply 4, ECF No. 20. The court had previously required Uber to circulate an updated version of the Agreement including a reasonable means of opting out of the Arbitration Provision (an option other than sending a letter via hand delivery or overnight mail to Uber's general counsel) and to provide drivers a renewed opportunity to opt out of the Arbitration Provision. *See O'Connor v. Uber Technologies, Inc.*, No. 13–cv–3826, 2013 WL 6407583, at \*6–7 (N.D.Cal. Dec. 6, 2013).

er *Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). But, even if an arbitration agreement exists, "[l]ike other contracts, however, [arbitration agreements] may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent–A–Center*, 561 U.S. at 68, 130 S.Ct. 2772 (internal quotation marks omitted).

The plaintiffs do not dispute that they accepted the terms of various iterations of the Rasier Agreement; they argue, however, that the Arbitration Provision in the Agreement is void because it is procedurally and substantively unconscionable. Resp. 7-9. The determination of whether the Court can decide this issue—an issue regarding the validity of the Arbitration Provision—requires an analysis of what gateway issues, if any, the parties agreed to delegate to an arbitrator to decide in the first instance.

## I. Delegation Clause

### A. Clear and Unmistakable Evidence

■■■ A delegation clause is an agreement to arbitrate gateway questions "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent–A–Center*, 561 U.S. at 69, 130 S.Ct. 2772. A court should not assume that parties have agreed to arbitrate these threshold issues unless there is " 'clea[r] and unmistakabl[e]' " evidence that they have so agreed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (brackets in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The FAA applies with equal force to a delegation clause, meaning it is valid under § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

■■■ The delegation clause at issue in the Uber agreements provides that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision[ ] ... shall be decided by an Arbitrator and not by a court or judge." Mem. in Supp. Ex. C ¶ 15.3.i. This is "clear and unmistakable" evidence that, when they accepted the Uber agreements, the plaintiffs agreed to submit any challenge to the delegation provision itself to arbitration; the plain language of the clause makes evident that the "validity of the Arbitration Provision ... shall be decided by an Arbitrator and not by a court or judge." Mem. in Supp. Ex. C ¶ 15.3.i.

In arguing to the contrary, the plaintiffs have relied on *Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185 (N.D.Cal.2015), in which a district court held that the otherwise unambiguous delegation clause was facially inconsistent with other provisions of the Rasier Agreement, and thus, was unenforceable. *Id.* 1199–1204. But, as Uber notes, the *Mohamed* court erred by failing to confine its analysis to the delegation clause, as severed from the remainder of the Agreement, as the Supreme Court instructed in *Rent–A–Center*. *Compare Rent–A–Center*, 561 U.S. at 70–72, 130 S.Ct. 2772 (A " 'written provision' 'to settle by arbitration a controversy' "—which includes a delegation clause—"is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." (emphasis in original)), *with Mohamed*, 109 F.Supp.3d at 1227 ("[T]he question of whether delegation language is clear and unmistakable should be determined in context of the contractual lan-

guage as a whole—not by artificially restricting the Court's review solely to the provisions of the arbitration clause."). This Court is therefore unpersuaded by the district court's decision in *Mohamed*. That decision, moreover, has now been reversed by the Ninth Circuit. *See Mohamed v. Uber Technologies, Inc.*, 836 F.3d 1102, 2016 WL 4651409 (9th Cir. Sep. 7, 2016).

This Court agrees with the Ninth Circuit and the numerous district courts that have found this delegation clause clear and unmistakable in delegating the question of arbitrability to an arbitrator. *See Suarez v. Uber Techs., Inc.*, No. 8:16–CV–166–T–30MAP, 2016 WL 2348706, at *4 (M.D.Fla. May 4, 2016) (concluding that identical language in Rasier Agreement was clear and unmistakable evidence of intent to arbitrate arbitrability); *Varon v. Uber Techs., Inc.*, No. CV MJG–15–3650, 2016 WL 1752835, at *6 (D.Md. May 3, 2016) (same); *Sena v. Uber Techs. Inc.*, No. CV–15–02418–PHX–DLR, 2016 WL 1376445, at *3–4 (D.Ariz. Apr. 7, 2016) (same); *see also Rent–A–Center*, 561 U.S. at 68, 130 S.Ct. 2772 (similar language deemed sufficiently clear and unmistakable evidence of intent to arbitrate arbitrability).

■■ That said, even if the parties evidenced a clear and unmistakable intent to delegate questions of arbitrability, the delegation clause may be unenforceable if it is unconscionable. *See Rent–a–Center*, 561 U.S. at 71, 130 S.Ct. 2772 ("that agreements to arbitrate are severable does not mean that they are unassailable"). The unconscionability determination is a matter of state law, *see Richardson v. C.I.R.*, 125 F.3d 551, 554 (7th Cir.1997), but the parties dispute which state's law applies. Uber asserts that Illinois law applies whereas the plaintiffs assert that California law applies, but the dispute is not

material to the resolution of the defendants' motion; even applying California law, the plaintiffs must demonstrate that the delegation clause is procedurally unconscionable. *Mohamed*, 836 F.3d at 1110–1111, 2016 WL 4651409, at *5; *see also Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 190 Cal.Rptr.3d 812, 353 P.3d 741, 748 (2015) ("The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." (brackets and emphasis in original) (internal quotations omitted)); *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 130 Cal. Rptr.2d 892, 63 P.3d 979, 983 (2003) ("[T]he [unconscionability] doctrine has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (internal quotation marks omitted)). The plaintiffs have failed to do so.

**B. Challenges to the Delegation Clause**

■ In challenging the validity of the delegation clause, the plaintiffs essentially reiterate the arguments made to the district court in *Mohamed*. *See* Resp. 7-12 (arguing, among other things, that the delegation clause is ambiguous when compared to other language in the contract outside of the Arbitration Provision, that the fee-splitting provision is unconscionable, and that they had no meaningful opportunity to negotiate the terms of the Agreement).[7] The Ninth Circuit reversed the district court's conclusion in *Mohamed* that Uber's delegation provisions were unconscionable, however, and this Court agrees with the Ninth Circuit's analysis. Simply put, the delegation provisions were

---

7. Although largely a moot point in view of the Ninth Circuit's decision in *Mohamed,* it should be noted that the plaintiffs erred egre-

giously in arguing that *O'Connor* was binding on this Court (Resp. 3: "all prior decisions interpreting California law that refuse to ap-

not unconscionable because the plaintiffs had the right to opt out from those provisions. See *Mohamed*, 2016 WL 4651409, *5–6 ("an arbitration agreement is not adhesive if there is an opportunity to opt out of it"). It bears noting in this regard that the Seventh Circuit has repeatedly rejected the argument that arbitration clauses are unconscionable because they do **not** contain opt out provisions. See *Scaffidi v. Fiserv, Inc.*, 218 Fed.Appx. 519, 521 (7th Cir.2007) (citing cases). Where there is one, a procedural unconscionability argument is doomed to fail.

The plaintiffs' arguments, moreover, pertain to provisions of the Arbitration Provision outside of the delegation clause or to entirely separate portions of the Agreement. The plaintiffs fail to challenge the validity of the delegation clause, itself, and the Court must enforce it pursuant to § 2. See *Rent–A–Center*, 561 U.S. at 72, 130 S.Ct. 2772 ("Section 2 operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce. Accordingly, unless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2."); *see also Suarez*, 2016 WL 2348706, at *4 ("Plaintiffs do not *directly* challenge the validity of the delegation provision. As such, Defendant's motion should be granted on this basis alone."). Thus, the plaintiffs' challenges to the validity and enforceability of the Arbitration Provision have been delegated to the arbitrator to decide in the first instance. See *Johnson v. W. & S. Life Ins. Co.*, 598 Fed.Appx. 454, 456 (7th Cir.2015) (enforcing delegation clause).

■ The plaintiffs also argue that they opted out of the Arbitration Provision (and therefore the delegation provision) in most recent version of the Agreement. Resp. 6-7. At the time they attempted to opt out, however, the plaintiffs had not yet accepted the December 11, 2015 version of the agreement; thus, no contract had yet been formed from which they could opt out. At the earliest, the plaintiffs opted out of the Arbitration Provision generally, and the delegation provision specifically, in January 2016, after they had filed their complaint in this case. Thus, even if their opt out was effective once they accepted the 2015 Agreement, that would have no bearing on the arbitrability of claims they had asserted based on earlier Agreements as to which they had not opted out of arbitration.[8]

Finally, in a notice of supplemental authority citing *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir.2016), the plaintiffs assert that the Agreement's prohibition on collective arbitration is invalid because it violates the National Labor Relations Act. In *Lewis*, the Seventh Circuit held that such a prohibition in an arbitration provision is invalid because Sections 7 and 8 of the NLRA make it an unfair labor practice

ply the arbitration clause should be binding, not simply authoritative"). No decision of a federal district court interpreting the law of the state in which it sits has precedential effect as to any other district court. For that matter, not even the Ninth Circuit's ruling is binding on this Court, apart from its irrefutable logic.

8. It could be argued, and Uber does, that the issue of whether a driver has opted out of the Arbitration Provision is a question of enforceability and therefore must be determined by an arbitrator. That argument, however, would seemingly render the ability to opt-out illusory, at least as to the delegation provision (how does one opt out of a delegation provision that requires you to arbitrate whether you opted out?). But it is not necessary to resolve this metaphysical puzzle here, because the plaintiffs plainly did not opt out of any agreement that existed before they filed their claims in this case. The delegation provision therefore applies to their claims and requires any further question of the arbitrability of those claims—such as unconscionability—to be submitted to arbitration.

to interfere with the right of employees to collectively bargain. *Id.* at 1161 ("Because it precludes employees from seeking any class, collective, or representative remedies to wage-and-hour disputes, [the] arbitration provision violates Sections 7 and 8 of the NLRA."). The arbitration provision in *Lewis*, however, did not include a delegation clause, so the threshold question of the enforceability of the arbitration provision was an issue for the court, rather than the arbitrator. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (if "the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently"). In the absence of a delegation clause, that question would be one for this Court and might well require the denial of the defendants' motion.[9] Here, by contrast, the existence of a delegation provision requires the submission of this question of the enforceability of the collective arbitration prohibition, like any other question of the Agreement's enforceability, to the arbitrator.

\* \* \*

■ The plaintiffs and Uber have entered into a valid agreement to delegate to an arbitrator questions of arbitrability. Accordingly, this Court cannot address the plaintiffs' argument that the Arbitration Provision is unconscionable; that is an issue for an arbitrator. *See Mohamed*, 2016 WL 4651409, \*6 (The district court should

have ordered the parties to arbitrate their dispute over arbitrability ... and we remand with instructions that it do so."). The defendants' motion to compel individual arbitration is therefore granted. The motion to dismiss is denied, however; as the Seventh Circuit has held repeatedly, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). This matter is stayed. Plaintiffs are directed to notify the Court within 14 days of the issuance of any arbitration award or other action that terminates the arbitration proceedings.

---

9. That outcome is not a certainty, however. The arbitration agreement in *Lewis* did not include an opt-out provision. Other circuits, such as the Ninth, have held that the presence of an opt-out provision in an arbitration agreement barring collective action does not violate the NLRA. *See, e.g., Mohamed*, 2016 WL 4651409, at \*6 n. 6. In *Lewis*, the Seventh Circuit expressed skepticism that an opt out provision would save an arbitration agreement that prohibited collective action, but left the question open, so the resolution of the issue is not a foregone conclusion. *Lewis*, 823 F.3d at 1155 ("We have no need to resolve these differences today, however, because in our case, it is undisputed that assent to [the] arbitration provision was a condition of continued employment.").