PATRICK E. HIGGINBOTHAM, Circuit Judge,
dissenting:
This case concerns whether a company’s class and collective action waiver violates Section 8(a)(1) of the National Labor Relations Act (“NLRA” or “the Act”), 29 U.S.C. §§ 151, et seq. Although this Court has held time and again that such waivers are permissible,[1] one important distinction .makes the waiver in this case different: there is no arbitration agreement. Without being contained in an arbitration agreement and thus shielded by the protective force of the Federal Arbitration Act (“FAA”), 9 U.S.C. §§ 1, et seq., a bare class and collective action waiver violates Section 8(a)(1).[2]
*642 Enacted by Congress in 1935, the NLRA “affords employees the rights to organize and to engage in collective bargaining free from employer interference.”[3] Two years after the NLRA's enactment, the Supreme Court declared that “the statute goes no further than to safeguard the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without- restraint or coercion by their employer. That is a fundamental right.”[4]
Two provisions of the Act are at issue here. First, Section 7, which provides:
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concert-éd activities for the purpose of collective bargaining or other mutual aid or protection .. .[5]
Second, Section 8(a)(1) makes it “an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in.the exercise of the rights guaranteed in section 157 of this title!.]”[6] Putting the two provisions together, the question in this case is whether maintaining and enforcing a class and collective action waiver constitute “unfair labor practice^]” that interfere with an employee’s right to “engage in other concerted activities for the purpose of ... other mutual aid or protection.” Distilled further, the question is whether class and collective actions constitute “other concerted activities for the purpose of ... mutual aid or protection.”
The plain language informs the answer. To this point, I agree with the analysis of Chief Judge Wood in the Seventh Circuit:
The ordinary meaning of the word “concerted” is: “jointly arranged, planned, or carried out; coordinated.” Concerted, New Oxford American Dictionary 359 , (3d ed. 2010). Activities are “thing[s] ..that a person or group does or has done” or “actions taken by a group in order to achieve their aims.” Id. at 16. Collective or class legal proceedings fit well within the ordinary understanding of “concerted activities.”[7]
But we need hot stop at the plain language—which the majority passes by—as the Supreme Court’s doctrine supports the same conclusion. “The term ‘concerted activity]’ is not defined in the Act but it clearly enough embraces the activities of employees who have joined together in order to achieve common goals.”[8] Class and collective actions fit comfortably in this understanding. Further, in Eastex, Inc. v. N.L.R.B., the Court explained:
The 74th Congress knew well enough that labor’s cause often is advanced on fronts other than collective bargaining and grievance settlement within the immediate employment context. It recognized this fact by choosing, as the language of § 7 makes clear, to protect concerted activities for the somewhat broader purpose of ‘mutual aid or pro: *643 tection’ as well as for. the narrower purposes of ‘self-organization’ and ‘collective bargaining.’ Thus, it has been held that the ‘mutual aid or-protection’ clause protects, employees from retaliation by their employers when they seek to improve working conditions through resort to administrative and judicial forums, and that employees’ appeals to legislators to protect their interests as employees are within the scope of this clause. To hold that activity of this nature is entirely unprotected—irrespective of location or the means employed—would leave employees open to retaliation for much legitimate activity that could improve their lot as employees.[9]
The majority opinion dances away from Eastex by pointing to its language that the Supreme Court “expressly declined to address ‘the question of what may constitute “concerted” activities in [the litigation] context’ for purposes of Section 7.” Though the majority correctly recites the Supreme Court’s statement in footnote 15,[10] it misses the forest for a tree.
In Eastex, the Supreme Court was faced with a version of the same question we face here: whether an employer violated § 8(l)(a) of the NLRA by interfering with its employees’ § 7 rights to engage in “concerted activities for the purpose of ... mutual • aid or protection.”[11]. But instead of addressing whether class and collective ■ actions constituted protected concerted activities, Eastex addressed whether employees’ distribution ■ of a pro-union newsletter constituted protected concerted activities.[12] The heart of Eastex was the Court’s interpretation of § 7’s “mutual aid or protection” clause.[13] And in holding that the distribution of the pro-union newsletter constituted protected activity,[14] the thrust of the Court’s reasoning was its rejection of a narrow interpretation of § 7.[15] In rejecting a narrow reading of’ § 7 and acknowledging Congress’s recognition that “labor’s cauSe often is advanced on fronts other than collective bargaining and grievance settlement,”[16] Eastex supports the understanding that class ánd collective actions come within § 7.
Returning to footnote 15, the majority elides the balance of that footnote: a citation to this Court’s opinion in Altex Ready Mixed Concrete Corp. v. NLRB, 542 F.2d 295, 297 (5th Cir. Í976). Two years before Eastex, this Court in Altex éxplicitly found legal actions encompassed in § 7.[17] That case, authored by Judge Ainsworth, stemmed from “a labor-management agreement provisiop concerning whether management could ‘require’ drivers to load *644 red dye into concrete mixer drums.”[18] The drivers instituted a strike, in connection with which “the drivers' union,- Teamsters, Chauffeurs, Warehousemen & Helpers, Local No. 5, filed an action in a Louisiana state court asking that Altex management be enjoined from requiring drivers to load red dye.”[19] This Court found that filing to be protected by § 7, explaining ■ that “[generally, filing by employees of a labor related civil action is protected activity under section 7 of the NLRA unless the employees acted in bad faith.”[20]
The majority’s claim that Altex “does not. hold that the phrase ‘other concerted activities’ contemplates participation in class and collective actions” is not sustainable. The ALJ in Altex had “found that filing the state court action against Altex was a concerted activity protected under section 7 of the NLRA.”[21] This Court, in turn, held that the ALJ’s findings were “supported by substantial evidence, and that ' they warrantfed] the inferences drawn from them.”[22] Altex, a binding decision, supplies the answer in this case in its affirmance that a “filing by employees”— which class and collective actions are—is a protected- concerted activity under § 7. With respect, the majority’s choice to apply Horton instead of Altex forgets our rule of orderliness, under which the earlier opinion controls.
That group legal actions are encompassed in § 7 is Consistent with other circuits’ understanding.[23] Importantly, the NLRB itself understands class and collective actions to fall within § 7’s protections.[24] In Spandsco Oil & Royalty Co., for example, the NLRB found that three union members’ suit for overtime back pay constituted protected concerted activity.[25] As the suit followed an employee’s discussions about pay due under the Fair Labor Standards Act, it is fair to assume that the suit was in fact an FLSA action.[26] As for class actions, in Harco Trucking, LLC & Scott Wood, the NLRB affirmed an ALJ’s finding that an employer “violated Section 8(a)(1)-of the Act by refusing to hire Wood because he engaged in the protected concerted activity of filing and maintaining [a] class action lawsuit[.]”[27] “Like other administrative agencies, the NLRB is entitled to judicial deference, when it interprets an ambiguous provision of a statute that it administers.”[28] This Court is obliged *645 to “enforce the Board’s order if its construction of the statute is reasonably defensible”[29] regardless of whether we would come to a different conclusion on first impression. The majority slights this well-established standard of review, footed in the more well-established principle of judicial restraint.
The majority also relies on a statement from D.R. Horton that “under the Board’s interpretation, ‘the NLRA would have to be protecting a right of access to a procedure that did not exist when the NLRA was (re)enacted.’”[30] This incorrectly suggests that Rule 23 was the origin of group litigation. Not so. Rule 23 did not create, but gave discipline to, group litigation. Nor is it a sustainable assertion that class actions are not concerted, contrary to the understanding of one of my colleagues in the Sixth Circuit.[31] Rule 23 at its core insists that class representatives’ interests coincide with the members of the class. And that class actions to be certified insist upon that community of interest only makes it more clear that in filing a class action, employees have “joined together in order to achieve common goals.”[32]
The Supreme Court, this Court, and the NLRB, have each made plain that class and collective actions constitute “other concerted activities” within § 7 of the NLRA. Consequently, when an employer like Convergys requires an ápplicant to waive class and collective actions, it has “interfere[d] with” that employee’s right “to engage in other concerted activities for the purpose of .., other mutual aid or protection^]”[33] The Board’s decision that Convergys violated Section 8(a)(1) of the NLRA should be enforced.
Plain language and controlling precedent notwithstanding, the majority claims that “[t]his court has already rejected the Board’s position that Section 7 guarantees a right to participate in class or collective aetions[.]” We have not. In the seminal cases of D.R. Horton and Murphy Oil, this Court held that class and collective action waivers in arbitration agreements do not violate Section 8(a)(1).[34] To ignore the,arbitration context is to rewrite these opinions and brush aside the very reason the waivers at issue were upheld.
Even a cursory reading of D.R. Horton shows that its reasoning is limited to arbi *646 tration cases. The first sentences reveal its moorings to arbitration and the FAA:
The National Labor Relations Board held that D.R. Horton, Inc. had violated the [NLRA] by requiring its employees to sign an arbitration agreement that, among other things, prohibited an employee from pursuing claims in a collective or class action. On petition for review, we disagree and conclude that the Board’s decision. did not give proper weight to the Federal Arbitration Act,[35]
The D.R. Horton majority acknowledged the support for the Board’s understanding that class and collective actions are protected by § 7[36] before sharply pivoting to the FAA: “To stop here, though, is to make the NLRA the only relevant authority. The'Federal Arbitration Act [] has equal importance in our review. Caselaw under the- FAA points us in a different direction than the course taken by the Board.”[37] The D.R. Horton Court went on to summarize the Board’s position with respect to the interaction between the NLRA and the FAA.[38] It then evaluated that -reasoning, focusing on whether the two exceptions to the enforcement of arbitration agreements applied.[39] It concluded that the FAA’s savings clause was not implicated[40] and that “[t]he NLRA should not be understood to contain a congressional command overriding application of the FAA.”[41],The D.R. Horton opinion concluded its analysis by remarking that “[t]he issue here is narrow: do the rights of collective action embodied in this labor statute make it distinguishable from case's which hold that arbitration must be individual arbitration?”[42] The opinion’s dependence on arbitration is clear. As it was in Murphy Oil.[43] Those cases did not hold that, absent the alternative processes of arbitration, class and collective action waivers are valid. They thus do not control here. ■
The majority’s insistence otherwise is partly premised on an irrelévant distinction between procedural and substantive rights. Such reasoning' is primarily a creature of- arbitration law.[44] The majority surely agrees. After all, almost every ease it cites in support of its proposition that “the use of a class or collective action is a procedure rather than a substantive right” is an arbitration case.[45]
*647 As then-Judge Roberts explained, “[statutory claims may be subject - to agreements to arbitrate, so long as the agreement does not require the claimant to forgo substantive rights afforded under the statute.”[46] This is because arbitration is understood as an alternative forum to the courts. Waiving judicial procedural rights in favor of arbitration is permissible precisely because the parties trade one forum and its attendant procedures for another.[47] It is within this framework that this Court in D.R. Horton found that class action procedures are not a substantive right.[48] As a result, they could be waived in favor of arbitration. Outside of the arbitration context, however, characterizing the right as procedural does not allow a required “waiver” since there is no alternative forum. Accordingly, in this non-arbitration case, the right to class and collective actions is best characterized as simply a statutory right protected from employer-required waiver.[49] The substantive/procedural dichotomy has no operative effect.[50]
. One need only look to the other provision's in § 7 to understand. Section 7 guarantees the right to “self-organization” and “to bargain collectively.” Both could be reasonably understood as procedural in nature, as they are processes for achieving substantive ends. Yet, just as an employer cannot require employees to waive their right to bargain collectively by characterizing bargaining as procedural,[51] an employer cannot require employees to waive their right to class and collective actions. In its final footnote, the majority notes, but declines to address, Convergys’ alternative argument that Section 7 rights may be waived. But of course § 7 rights are not waivable; § 8(a)(1) says so.[52]
The majority fails to appreciate the role of the PAA in enforcing agreements to arbitrate. In 2013, this Court .decided D.R. Horton, affirmed in 2015 by Murphy Oil. Both cases held that class and collective action waivers in arbitration agreements were permissible.[53] The following year, *648 four other circuits decided the issue. The Eighth and Second Circuits agreed that the waivers were permissible;[54] the Seventh and Ninth Circuits disagreed.[55] This year the Supreme Court granted certiorari in the Ninth, Seventh, and Fifth Circuit cases and consolidated them.[56] After the Court’s grant of certiorari, the Sixth Circuit also weighed in, siding with the Seventh and Ninth Circuits.[57] Whether class and collective action waivers within arbitration agreements are permissible will soon be decided by the Supreme Court.
Today we decide whether a class and collective action waiver demanded as a condition of employment sans arbitration agreement is permissible.[58] The language of § 7 cannot be plainer: class and collective actions are “other concerted activities te the purpose of ... mutual aid or protection.”[59] This conclusion is reinforced by Supreme Court precedent, this Court’s precedent, and the NLRB’s interpretation of the Act, to which we owe deference. Because such actions are rights protected by § 7, employers cannot interfere with them by forcing employees to waive them.[60] I would enforce the Board’s orders, and so I dissent.

. E.g., D.R. Horton, Inc. v. N.L.R.B., 737 F.3d 344, 348 (5th Cir. 2013); Murphy Oil USA, Inc. v. N.L.R.B., 808 F.3d 1013, 1015 (5th Cir. 2015), cert. granted, — U.S. —, 137 S.Ct. 809, 196 L.Ed.2d 595 (2017); Chesapeake Energy Corp. v. N.L.R.B., 633 Fed.Appx. 613, 614-15 (5th Cir. 2016) (per curiam) (unpublished).

. 29 U.S.C. § 158(a) ("It shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[J”).

. N.L.R.B. v. Health Care & Ret. Corp. of Am., 511 U.S. 571, 573, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994).

. N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 33, 57 S.Ct. 615, 81 L.Ed. 893 (1937).

. 29 U.S.C. § 157 (emphasis added).

. 29 U.S.C. § 158(a).

. Lewis v. Epic Sys. Corp., 823 F.3d 1147, 1153 (7th Cir. 2016), cert. granted, — U.S. —, 137 S.Ct. 809, 196 L.Ed.2d 595 (2017); accord Black’s Law Dictionary (9th ed. 2009) (defining "concerted activity” as "[a]ction by employees concerning wages or working conditions”).

. N.L.R.B. v. City Disposal Sys. Inc., 465 U.S. 822, 830, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984) (citation omitted).

. 437 U.S. 556, 565-67, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978) (citations omitted) (emphasis added).

. See id. at 566 n.15, 98 S.Ct. 2505 ("We do not address here the question of what may constitute ‘concerted’ activities in this context.” (citation omitted)).

. Id. at 558, 98 S.Ct. 2505.

. See id.

. See id. at 562, 98 S.Ct. 2505 ("Because of apparent differences among the Courts of Appeals as to the scope of rights protected by the 'mutual aid or protection' clause of § 7, we granted certiorari.” (citations omitted)).

. See id. at 570, 98 S.Ct. 2505.

. See, e.g., id. at 565, 98 S.Ct. 2505 ("We ... find no warrant for petitioner’s view that employees lose their protection under the ‘mutual aid or protection’ clause when they seek to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship.”).

. Id. at 565, 98 S.Ct. 2505.

. 542 F.2d at 297.

. Id. at 296.

. Id.

. Id. at 297 (emphasis added) (citations omitted).

. Id. at 296,

. Id. at 297 (citation omitted).

. Brady v. Nat'l Football League, 644 F.3d 661, 673 (8th Cir. 2011) ("[A] lawsuit filed in good faith by a group of employees to achieve more favorable' terms or conditions of employment is ‘concerted activity’ under § 7 ....” (citations omitted)); Leviton Mfg. Co. v. N.L.R.B., 486 F.2d 686, 689 (1st Cir. 1973) (“[T]he filing of a labor related civil action by a group of employees is ordinarily a concerted activity protected by § 7, unless the employees acted in bad faith.” (citations omitted)).

. See Spandsco Oil & Royalty Co., 42 NLRB 942, 949 (1942); In Re 127 Rest. Corp., 331 NLRB 269, 275 (2000) ("It is well settled that the filing of a civil action by employees is protected activity unless done with malice or in bad faith.” (citations omitted)).

. 42 NLRB at 949.

. See id. at 948.

. 344 NLRB 478, 478-79 (2005) (emphasis added).

. Lechmere, Inc. v. N.L.R.B., 502 U.S. 527, 536, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992) (citations omitted); accord N.L.R.B. v. Fin. Inst. Employees of Am., Local 1182, Chartered by United Food & Commercial Workers Int’l Union, AFL-CIO, 475 U.S. 192, 202, 106 S.Ct. 1007, 89 L.Ed.2d 151 (1986) ("Our cases have previously recognized the Board’s broad authority to construe provisions of the Act, and *645 have deferred to Board decisions that are not irrational or inconsistent with the Act.” (citations omitted)); Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (“If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute.” (footnotes omitted)).

. Murphy Oil USA, 808 F.3d at 1017 (citation and quotation marks omitted).

. D.R. Horton, 737 F.3d at 362.

. Nat’l Labor Relations Bd. v. Alternative Entm't, Inc., 858 F.3d 393, 415 (6th Cir. 2017) (Sutton, J„ concurring in part and dissenting in part) ("Even if procedure were relevant to ‘concertedness,’ there is nothing inherently ‘concerted’ about the class action ... A single plaintiff can litigate a class action to completion without any intervention by or material support from any other class members. This sort of representative action is not necessarily concerted. If anything, it risks undermining genuine group action by permitting the representative plaintiff to stand in for all nonparticipating parties.”).

. City Disposal Sys. Inc., 465 U.S. at 830, 104 S.Ct. 1505 (citation omitted).

. 29 U.S.C. § 157.

. D.R. Horton, 737 F.3d at 362; Murphy Oil USA, 808 F.3d at 1018.

. D.R. Horton, 737 F.3d at 348 (emphasis added).

. See. id. at 356-57.

. Id. it 357.

. See id.'at 358.

. Id. ("We start with the requirement under the FAA that arbitration agreements must be enforced according to their terms'. Two exceptions to this rule are at issue here: (1) an arbitration agreement may be invalidated on any ground that would invalidate a contract under the FAA’s 'saving clause,’; and (2) application of the FAA may be precluded by another statute’s contrary congressional command!.]” (citations omitted)).

. Id. at 360 ("The saving clause is not a basis for invalidating the waiver of class procedures in the arbitration agreement.”).

. Id. at 362.

. Id. (citation omitted).

. Murphy Oil USA, 808 F.3d at 1018 ("Murphy Oil committed no unfair labor practice by requiring employees to relinquish their right to pursue class or collective claims in all forums by signing the arbitration agreements at issue here.” (citation omitted)).

. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

. D.R. Horton, 737 F.3d at 357; Reed v. Fla. Metro. Univ., Inc., 681 F.3d 630, 631-32 (5th Cir. 2012), abrogated on other grounds by Oxford Health Plans LLC v. Sutter, — U.S. —, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013) (appeal of arbitration award for class arbitration); Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 296-97 (5th Cir. 2004) (affirming judgment to compel arbitration); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, *647 23, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (considering "whether a claim under the Age Discrimination in Employment Act of 1967 ... can be subjected to compulsory arbitration pursuant to an arbitration agreement”).

. Booker v. Robert Half Int’l, Inc., 413 F.3d 77, 79 (D.C. Cir. 2005) (emphasis added) (citing Gilmer, 500 U.S. at 26, 111 S.Ct. 1647; Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1481 (D.C. Cir. 1997)).

. Mitsubishi Motors Corp., 473 U.S. at 628, 105 S.Ct. 3346 (“By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.”); accord Gilmer, 500 U.S. at 31, 111 S.Ct. 1647.

. D.R. Horton, 737 F.3d at 357.

. See Alternative Entm't, Inc., 858 F.3d at 407 ("[Ejven if the right to concerted legal action is procedural, rather than substantive, it is still a right guaranteed by § 7 of the NLRA”).

. See Killion v. KeHE Distributors, LLC, 761 F.3d 574, 592 (6th Cir. 2014) (arbitration agreement cases do not "speak to the validity of a collective-action waiver outside of the arbitration context").

. See Nat'l Licorice Co. v. N.L.R.B., 309 U.S. 350, 359-61, 60 S.Ct. 569, 84 L.Ed. 799 (1940) (certain restraints on collective bargaining violated Act).

. 29 U.S.C. § 158(a) (it is "an unfair .labor practice for an employer ... to interfere-with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title”).

. See D.R. Horton, 737 F.3d at 348; Murphy Oil USA, 808 F.3d at 1018. Not all judges in our Circuit have embraced the reasoning of those opinions. See D.R. Horton, 737 F.3d at 364 (Graves, J., concurring in part and dissenting in part) (agreeing with NLRB that arbitration agreement interfered with § 7 *648 rights); SF Markets, L.L.C. v. N.L.R.B., No. 16-60186, 691 Fed.Appx. 815, 815, 2016 WL 7468041, at *1 (5th Cir. 2016) (per curiam) (unpublished) (Dennis, J., concurring) (urging en banc reconsideration of issue).

. Cellular Sales of Missouri, LLC v. N.L.R.B., 824 F.3d 772, 776 (8th Cir. 2016) (“Cellular Sales did not violate section 8(a)(1) by requiring its employees to enter into an arbitration agreement that included a waiver of class or collective actions in all forums to resolve employment-related disputes.”); Patterson v. Raymours Furniture Co., Inc., 659 Fed.Appx. 40, 43 (2d Cir. 2016), as corrected (Sept. 7, 2016), as corrected (Sept. 14, 2016) (unpublished) (summary order) ("If we were writing on a clean slate, we might well be persuaded, for the reasons forcefully stated in Chief Judge Wood’s and Chief Judge Thomas's opinions in Lewis and Morris, to join the Seventh and Ninth Circuits and hold that the EAP’s waiver of collective action is unenforceable. But we are bound by our Court’s decision in Sutherland v. Ernst & Young LLP, 726 F.3d 290 (2d Cir. 2013), which aligns our Circuit on the other side of the split.”); see also Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1327 (11th Cir. 2014) (arbitration agreement waiving FLSA collective actions enforceable under FAA),

. Lewis, 823 F.3d at 1151 (holding arbitration agreement that barred collective arbitration and collective action in other forums violated NLRA and was unenforceable under FAA); Morris v. Ernst & Young, LLP, 834 F.3d 975, 979 (9th Cir. 2016) (concluding that arbitration agreement that precluded employees from bringing concerted legal claims about their employment violated NLRA, and vacating order compelling individual arbitration).

. Alternative Entm't, 858 F.3d at 401 n.4 (citing — U.S. —, 137 S.Ct. 809, 196 L.Ed.2d 595 (2017)).

. Id. at 408 (”[A]n arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable. Such a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NLRA, falls within the FAA’s saving clause.”).

. The Sixth Circuit has decided a similar issue. Killion, 761 F.3d at 579, 592 (holding class and collective action waiver outside of arbitration agreement invalid in FLSA case, and noting "no countervailing federal policy that outweighs the policy articulated in the FLSA”),

. 29 U.S.C. § 157.

. 29 U.S.C. § 158(a).