138 Nev., Advance Opinion 66

# IN THE SUPREME COURT OF THE STATE OF NEVADA

UBER TECHNOLOGIES, INC., A
CORPORATION; RASIER, LLC, A
CORPORATION; AND RASIER-CA,
LLC,
Appellants,
vs.
MEGAN ROYZ, AN INDIVIDUAL; AND
ANDREA EILEEN WORK, AN
INDIVIDUAL,
Respondents.

No. 82556

FILED

SEP 29 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a motion to compel arbitration. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

*Reversed and remanded with instructions.*

Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, and D. Lee Roberts, Jr., and Ryan T. Gormley, Las Vegas; Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, and Karen L. Bashor and Douglas M. Rowan, Las Vegas, for Appellants.

Glancy Prongay & Murray LLP and Kevin Francis Ruf and Natalie Stephanie Pang, Los Angeles, California; Quirk Law Firm and Trevor M. Quirk, Las Vegas, for Respondents.

BEFORE THE SUPREME COURT, EN BANC.

22-30581

*OPINION*

By the Court, SILVER, J.:

Where the Federal Arbitration Act (FAA), 9 U.S.C. § 1-16, governs an arbitration agreement, state courts are compelled to follow that act and any federal law construing it. Under Nevada law, district courts typically decide the threshold question of whether a dispute is subject to an arbitration agreement. *See Clark Cty. Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 590, 789 P.2d 136, 137 (1990). But the FAA allows the parties to agree that the arbitrator will resolve threshold arbitrability questions, and in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, the United States Supreme Court unanimously held that where the parties so contract, the court must enforce that agreement and refer the case to the arbitrator to determine threshold issues of arbitrability, even if the court believes the arbitration agreement cannot apply to the dispute at hand. __ U.S. __, __, 139 S. Ct. 524, 527-28, 531 (2019).

We are bound by this precedent in regard to contracts governed by the FAA, and we therefore hold that where an arbitration agreement delegates the threshold question of arbitrability to the arbitrator, the district court must refer the case to arbitration even if the district court concludes the dispute is not subject to the arbitration agreement. Because the arbitration agreement here is governed by the FAA and included a delegation clause that clearly and unmistakably delegated the threshold question of arbitrability to the arbitrator, the district court erred by denying the motion to compel arbitration on the basis that the arbitration agreement did not cover the dispute. We therefore reverse the district court's order and direct the court to refer the case to arbitration.

 

## *FACTS*

Appellants Uber Technologies, Inc., and its affiliates, Rasier, LLC, and Rasier-CA, LLC (collectively Uber), are technology companies that created the "Uber app." The Uber app is a software application that allows a person to hire an independent driver to take them to their desired destination. To use the Uber app, riders must first create an account, and as part of this process, users must consent to Uber's terms and conditions.

Pertinent here, Uber's terms and conditions include an arbitration agreement that provides that all disputes with Uber will be resolved through arbitration and that the FAA governs the arbitration agreement's interpretation and enforcement. The arbitration agreement explains that arbitration will be in accordance with the American Arbitration Association's (AAA) rules and additionally includes the following delegation clause:

> The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including that any part of this Arbitration Agreement is void or voidable. The arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delays, laches, or estoppel.

The arbitration agreement also includes a severability clause providing that if any portion of the agreement is found to be unenforceable, that portion shall be severed from the agreement such that it does not invalidate the remainder thereof.

SUPREME COURT
OF
NEVADA

(O) 1947A

3

Andrea Work and Megan Royz, respondents here, both downloaded the Uber app and created accounts in 2015 and 2016, respectively. On February 22, 2018, Work ordered a ride for herself and Royz through the Uber app. While Work and Royz were riding in the Uber, their driver rear-ended another Uber driver who was executing a U-turn. Work and Royz subsequently filed a personal injury lawsuit against both drivers and Uber.

Uber moved to compel arbitration, arguing that Work and Royz had agreed to arbitrate their claims and, moreover, that the arbitration agreement included a delegation clause requiring the arbitrator to resolve disputes related to the arbitration agreement's existence, interpretation, or enforceability. Work and Royz opposed Uber's motion, arguing that their claims did not fall within the scope of the arbitration agreement and that the agreement was unenforceable against Royz because she did not use the Uber app to request the ride. The district court denied the motion, concluding that the arbitration agreement focused on the terms of service, not car accidents, and thus does not plainly provide that the parties agreed to submit this particular dispute to arbitration. The district court also determined that the arbitration agreement was not enforceable against Royz because she did not use the Uber app to request the ride.

Uber moved for reconsideration, asserting that the United States Supreme Court's decision in *Schein* requires the threshold issue of arbitrability to be resolved by the arbitrator rather than the district court, where, as here, the arbitration agreement contains a delegation clause. The district court denied that motion as well, reasoning that the delegation clause, read in conjunction with Uber's terms and conditions, does not cover motor vehicle accident disputes. Uber appeals.

## DISCUSSION

The question before us is whether the delegation clause in the parties' arbitration agreement required the arbitrator to determine the threshold issue of arbitrability, or whether the district court could make that determination. We review de novo the district court's decision to deny the motion to compel arbitration. *See Masto v. Second Judicial Dist. Court*, 125 Nev. 37, 44, 199 P.3d 828, 832 (2009).

*A district court may not decline to apply a delegation clause on the ground that the arbitration agreement does not cover the dispute*

The parties contest the interpretation and reach of the arbitration agreement and its delegation clause. Although they do not dispute that the FAA governs the arbitration agreement or that federal law is authoritative, they disagree as to whether *Schein* requires the district court to refer their case to arbitration without first deciding if the dispute is arbitrable. Uber argues that *Schein* clarified that a court must enforce delegation agreements even if the party's argument in favor of arbitrability is wholly groundless, and that the district court's decision conflicts with this precedent. Work and Royz respond that the delegation clause is not operative in this situation because Section 2 of the FAA limits the scope of the Act to controversies "arising out of [the underlying] contract." Work and Royz further contend *Schein* is distinguishable because the district court did not invoke the "wholly groundless" exception here.

Nevada has a "fundamental policy favoring the enforceability of arbitration agreements," and we will "liberally construe arbitration clauses in favor of granting arbitration." *Tallman v. Eighth Judicial Dist. Court*, 131 Nev. 713, 720, 359 P.3d 113, 118-19 (2015). Where an arbitration agreement is covered by the FAA, state courts must enforce the FAA with respect to that agreement. *Marmet Health Care Ctr., Inc. v. Brown*, 565

U.S. 530, 530-31 (2012). Once the Supreme Court "has fulfilled its duty to interpret federal law, a state court may not contradict or fail to implement the rule so established," as such would be "incorrect and inconsistent with clear instruction in the precedents of [the United States Supreme Court]." *See id.* at 531-32. Accordingly, where the FAA governs a contract, we are bound by Supreme Court precedent interpreting the FAA.

Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Schein*, ___ U.S. at ___, 139 S. Ct. at 529. A delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement . . . such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). In other words, it is "simply an additional, antecedent agreement" to arbitrate a gateway issue. *Schein*, ___ U.S. at ___, 139 S. Ct. at 529. If the parties "clearly and unmistakably" agree to delegate such threshold questions to an arbitrator, then courts must enforce the delegation clause like any other arbitration provision under the FAA. *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649 (1986); *see Rent-A-Ctr.*, 561 U.S. at 70; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he court's standard for reviewing the arbitrator's decision [of who has the primary power to decide arbitrability] should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate.").

In *Schein*, the parties disagreed as to whether their dispute was subject to arbitration. ___ U.S. at ___, 139 S. Ct. at 528. The parties' contract provided that any dispute must be resolved by arbitration in accordance with the AAA's rules, which, in turn, provide that arbitrators

hold the power to resolve arbitrability questions. *Id.* The district court concluded that because the argument in favor of arbitrability was wholly groundless, the court could decide arbitrability. *Id.*

The Supreme Court disagreed, rejecting the "wholly groundless" exception and explaining that

> [w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Id.* at \_\_\_, 139 S. Ct. at 528-29. The Supreme Court therefore held that a court may not decide arbitrability if the contract clearly and unmistakably grants that authority to the arbitrator. *Id.* at \_\_\_, 139 S. Ct. at 530-31.

*Schein*, read in conjunction with other federal law, thus provides clear instruction regarding the application of the FAA to a delegation clause in an arbitration agreement: where the parties have clearly and unmistakably delegated the threshold question of arbitrability to the arbitrator, the district court may not decline to refer the case to arbitration on the ground that the arbitration agreement does not cover the dispute.[1] The district court may determine whether the arbitration

---

[1]We are not persuaded by Work and Royz's argument that section 2 of the FAA supports the district court's decision, as that section addresses the enforceability of arbitration agreements but does not restrict the parties' ability to delegate threshold issues to the arbitrator. *See* 9 U.S.C. § 2; *see also Rent-A-Ctr.*, 561 U.S. at 72 (concluding a delegation clause was valid under section 2 without indicating that that statutory provision required the district court to first determine arbitrability). Nor are we persuaded that the scope of the arbitration agreement controls the scope of

agreement is a valid contract before referring the case to arbitration. *Id.* at 530. Or, if the delegation clause is severable from the arbitration agreement and delegates questions regarding the arbitration agreement's validity or application to the arbitrator, the district court may determine whether the delegation clause itself is a valid agreement. *See Rent-A-Ctr.*, 561 U.S. at 72 (recognizing that where a delegation clause in an arbitration agreement is severable, unless the party opposing arbitration challenges the delegation clause specifically, the court should treat that clause as valid and leave challenges to the arbitration agreement's validity for the arbitrator); *see also Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55-58 (E.D.N.Y. 2017) (considering only whether a delegation clause was binding and otherwise leaving questions of the arbitration agreement's validity to the arbitrator pursuant to the delegation clause). But in either situation, the district court may not bypass contract language delegating threshold issues to the arbitrator by finding that the arbitration agreement does not apply to the dispute.[2]

Because the Supreme Court's precedent is controlling, we are not free to deviate from it here. *See Marmet Health*, 565 U.S. at 531-32. We therefore consider whether the parties clearly and unmistakably delegated

---

the delegation clause here, as such would contradict the purpose of a delegation clause and, moreover, this delegation clause's broad language plainly belies that argument.

[2]Although Work and Royz argue that the district court did not utilize the wholly groundless exception rejected in *Schein*, and although the district court did not expressly reference the exception, we note the district court's reasoning closely tracked the exception, as the court declined to apply the delegation clause on the ground that Uber failed to show that the claims were subject to arbitration. *See Schein*, ___ U.S. at ___, 139 S. Ct. at 529 (describing the wholly groundless exception).

the threshold question of arbitrability to the arbitrator, as if they did, we must enforce that agreement.

*The parties clearly and unmistakably delegated threshold issues of arbitrability to the arbitrator*

Uber argues that the delegation clause expressly and clearly delegates all threshold issues of arbitrability to the arbitrator. Work and Royz counter that because the delegation clause applies to and incorporates the arbitration agreement's terms, the arbitration agreement applies only to claims arising out of or relating to its terms. Therefore, Work and Royz contend, the delegation clause does not clearly and unambiguously delegate all threshold questions of arbitrability to the arbitrator. We review issues of contract interpretation de novo. *See Galardi v. Naples Polaris, LLC*, 129 Nev. 306, 309, 301 P.3d 364, 366 (2013) (interpreting a contract where the underlying facts are not in dispute presents a question of law).

We are not persuaded by Work and Royz's argument because it confuses the preliminary question of whether the contract delegates arbitrability issues with the secondary question of whether the dispute is arbitrable. In determining whether a contract delegates threshold issues such as arbitrability to the arbitrator, we must consider the contract's language as written. *See Schein*, ___ U.S. at ___, 139 S. Ct. at 529 (explaining that pursuant to the FAA, courts must "interpret the contract as written"). And as many courts have found, incorporating the AAA's rules, even without more, constitutes clear and unmistakable evidence of intent to submit the question of arbitrability to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (concluding that a contract's incorporation of the AAA rules constituted clear and unmistakable evidence of intent to submit questions of arbitrability to the arbitrator); *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 703-05 (Fla. 2022) (compiling

federal cases reaching the same conclusion). Not surprisingly, then, express delegation clauses often easily establish clear and unmistakable evidence of the parties' intent to have arbitrability resolved by an arbitrator. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1207-09 (9th Cir. 2016) (enforcing delegation clauses that delegated issues of "enforceability, revocability or validity of the Arbitration Provision" to the arbitrator); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 889, 891 (N.D. Ill. 2016) (finding clear and unmistakable evidence to delegate gateway questions to the arbitrator and upholding a delegation clause that required disputes "arising out of or relating to interpretation or application of this Arbitration Provision, including [its] enforceability, revocability or validity" to be decided by the arbitrator).

Both are present in the contract at issue here. The arbitration agreement incorporates the AAA's rules and includes an express delegation clause. The delegation clause provides, in broad terms, that the parties agree that the arbitrator has exclusive authority to resolve disputes relating to the arbitration agreement's interpretation, applicability, enforceability, and formation. In fact, the delegation clause specifically states that the arbitrator is responsible for deciding all threshold arbitrability issues. We conclude this language is clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to an arbitrator.

Moreover, our conclusion applies with equal force to Royz. Although Royz did not order the Uber ride or use the Uber app on the day of the accident, she previously contracted with Uber when she downloaded the Uber app and thereby assented to all of Uber's terms and conditions, including the arbitration provision and delegation clause. Thus, although it remains to be seen whether the arbitration agreement covers the

underlying accident, that is a question for the arbitrator to decide under the plain language of the delegation clause.[3] Accordingly, the district court must refer the case to arbitration.

## CONCLUSION

Where the United States Supreme Court interprets the FAA, state courts may not contradict or circumvent that precedent. In *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, ___, 139 S. Ct. 524, 531 (2019), the United States Supreme Court explained that the FAA allows parties to agree that an arbitrator will determine threshold arbitrability questions, and the Court unanimously concluded that if a party's arbitration agreement shows a clear and unmistakable intent to delegate the threshold issue of arbitrability to the arbitrator, a court may not deny a motion to compel arbitration on grounds that the arbitration agreement does not apply to the dispute. Here, the district court erred by denying

---

[3]We decline to reach the parties' arguments regarding unconscionability, as Work and Royz waived this argument by raising it for the first time in their opposition to the motion for reconsideration, *see Thomas v. Hardwick*, 126 Nev. 142, 158, 231 P.3d 1111, 1121 (2010), and, moreover, the delegation clause clearly delegates questions of unconscionability to the arbitrator. As to the remaining arguments, we have considered them and either conclude they are without merit or need not be addressed in light of our decision. Notably, we are unpersuaded by Work and Royz's argument regarding a lack of mutual assent, where Work and Royz indisputably created Uber accounts in which they agreed to Uber's terms and conditions, including the delegation clause. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79-80 (2d Cir. 2017) (deciding that plaintiff manifested his assent to Uber's arbitration agreement by creating an account on the Uber app, which requires every Uber user to agree to its terms, regardless of whether plaintiff clicked on the hyperlink to view Uber's terms); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988-90 (N.D. Cal. 2017) (deciding that plaintiff was on notice of Uber's terms and conditions and assented to them by creating an Uber account).

Uber's motion to compel on ground that the claims are not subject to the arbitration agreement, as the agreement's delegation clause expressly requires the arbitrator to determine threshold issues of arbitrability. We therefore reverse the district court's order denying the motion to compel arbitration and remand this matter with directions that the court grant the motion and refer the case to arbitration.

_____, J.
Silver

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

_____, J.
Pickering

HERNDON, J., with whom STIGLICH, J., agrees, concurring in part and dissenting in part:

As to appellants' claims regarding the district court's decision pertaining to respondent Andrea Work, I agree, based on the particular facts and circumstances presented, that the district court erred. I do not, however, completely agree with the majority's analysis of the district court's role in arbitration agreement delegation clause cases in the "post-*Henry Schein*" era. Thus, I concur regarding Work in the result only.

As to appellants' claims regarding the district court's decision pertaining to respondent Megan Royz, I respectfully dissent, as I do not believe the district court erred. I believe the majority has taken far too rigid a view of the holding in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524 (2019). In so doing, the majority has created the very "absurd results" cautioned against by numerous courts that have been called upon to opine on arbitration agreement and/or delegation clause cases. *See Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 192 (2d Cir. 2019); *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995); *Moritz v. Universal City Studios LLC*, 268 Cal. Rptr. 3d 467, 475 (Ct. App. 2020). The *Henry Schein* court focused on whether lower courts could apply the "wholly groundless" exception to cases when determining the issue of arbitrability. ___ U.S. at ___, 139 S. Ct. at 529-31. However, not only does this case not present an instance where a district court applied the "wholly groundless" exception, but it is also factually distinctive from *Henry Schein*. In *Henry Schein*, a contract clearly governed the parties' relationship, but to avoid arbitration the lower court applied the "wholly groundless" exception. Here, no contract governed the interaction Royz had with appellants that led to

the underlying action. And extending an arbitration clause from a contract that governed completely different interactions Royz had with appellants to the underlying action is absurd. "[*Henry*] *Schein* presupposes a dispute arising out of the contract or transaction, i.e., some minimal connection between the contract and the dispute," *Moritz*, 268 Cal. Rptr. 3d at 475, which is just not the case here for Royz.

As the majority notes, Work and Royz each downloaded Uber's rideshare app and created accounts. On February 22, 2018, while Work and Royz were riding in an Uber, they were involved in a motor vehicle accident, which is the subject of the personal injury lawsuit at issue. While respondents each had an Uber account, only Work invoked her account and requested Uber's rideshare service on February 22, 2018. Royz did not invoke her account or order any vehicle. She was merely a passenger. The terms of an agreement she entered into with Uber for when she utilized Uber's app to request and receive a ride previously cannot now govern the circumstances under which she was only a passenger in a vehicle.

In *Coors Brewing Co. v. Molson Breweries*, the court noted that an arbitration clause "does not extend to all disputes of any sort . . . but only to disputes touching specified provisions of the agreement." 51 F.3d at 1516. The *Coors* court, using an example of two business owners who execute a sales contract containing an arbitration clause and thereafter, one assaults the other, pointed out how absurd it would be if one party were to attempt to use the sales contract to force the assault case to arbitration. *Id.* In short, one party cannot unilaterally extend, in perpetuity, an arbitration agreement to cover any and every dispute the parties may ever happen to have simply because the parties previously signed an arbitration agreement covering certain, specified disputes. *See Moritz*, 268 Cal. Rptr. 3d at 476

(noting that "[a]ppellants' argument that an arbitration provision creates a perpetual obligation to arbitrate any conceivable claim that [a party] might ever have against them is plainly inconsistent" with the FAA's requirement that the dispute relate to the contract in which the arbitration provision appears); *see* 9 U.S.C. § 2 (providing that an arbitration agreement applies to a "controversy thereafter arising out of such contract"). To allow a party to do so would, without question, run afoul of common sense and public policy and create absurd results.

Regarding delegation clauses, it would be equally illogical to seek to force one of the above business owners to submit the question of arbitrability of the assault case to an arbitrator when the matter involved an arbitration clause that only covered the sales contract. Most importantly, it would seem highly unlikely that there could be evidence that the parties clearly and unmistakably intended to submit the question of the arbitrability of a subsequent assault claim to an arbitrator when they executed a general sales contract arbitration delegation clause.

Here, Uber's terms of service govern an individual's "use . . . of the applications . . . and services," and the arbitration agreement states that an individual and Uber agree to arbitrate "any dispute . . . arising out of or relating to . . . these Terms . . . ." Under these facts and circumstances, forestalling Royz's access to the courts by forcing her to submit the question of arbitrability to an arbitrator is akin to forcing the business owner to submit the question of arbitrability of the assault case to an arbitrator. Royz did not use Uber's app or request services on the date of the accident and there is not, and could not be, any evidence that she intended to submit this type of dispute to an arbitrator to decide arbitrability. In case the absurdity of extending *Henry Schein* to Royz's situation is still unclear, I

submit another example. Under the majority's analysis, if Royz were a pedestrian who had an Uber app and account and had previously utilized Uber's app and services, and who was injured when an Uber driver struck her while she was walking, she would still have to submit her personal injury claim to an arbitrator to determine arbitrability because she had at one time, in an unrelated instance, entered into an agreement with Uber. Such a requirement is absurd and unfairly delays Royz's access to justice.

As the court in *Metropolitan Life Insurance Co. v. Bucsek* explained, "[t]he right of access to courts is of such importance that courts will retain authority over the question of arbitrability of the particular dispute unless 'the parties clearly and unmistakably provide[d]' that the question should go to arbitrators." 919 F.3d at 190 (alteration in original) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). To this point, *Metropolitan Life Insurance Co.*, notably entered after the opinion in *Henry Schein* was rendered, held that "vague provisions as to whether *the dispute* is arbitrable are unlikely to provide the needed clear and unmistakable inference of intent to arbitrate its arbitrability." 919 F.3d at 191 (emphasis added). Quite simply, Royz did not invoke her account and did not request Uber's services on the date in question. Still, Uber seeks to have the question of arbitrability decided by an arbitrator even though the scenario involves a dispute occasioned by an event occurring during an account holder's *nonuse of their account*. This is the epitome of absurdity. *See Moritz*, 268 Cal. Rptr. 3d at 475 ("When an arbitration provision is read as standing free from any [underlying] agreement, absurd results ensue." (alteration in original) (internal quotation marks omitted)). There are not just "vague provisions" at play here; rather, there are actually no provisions that provide clear and unmistakable evidence that the parties intended to

submit the question of arbitrability of a dispute arising from an event outside of an account holder's use of their account to an arbitrator. Accordingly, I believe that the majority has erred in reaching its disposition as to Royz, and therefore, I respectfully dissent in part.

_____, J.
Herndon

I concur:

_____, J.
Stiglich