139 Nev., Advance Opinion 48

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| RUAG AMMOTEC GMBH, A FOREIGN COMPANY; RUAG HUNGARIAN AMMOTEC, INC., A FOREIGN COMPANY; RUAG AMMOTEC USA, INC., A FOREIGN COMPANY; AND RUAG HOLDING AG, A FOREIGN COMPANY, Appellants, vs. ARCHON FIREARMS, INC., A DOMESTIC CORPORATION; ARSENAL FIREARMS LTD., A FOREIGN COMPANY; AF PRO TECH GROUP KFT, A FOREIGN COMPANY; AND ARSENAL FIREARMS USA, LLC, Respondents. | No. 84142 FILED NOV 16 2023 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from district court orders denying motions to compel arbitration. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Reversed and remanded.*

Hogan Lovells US LLP and Christopher J. Cox and Tej Singh, Redwood City, California, and Helen Y. Trac, San Francisco, California; Snell & Wilmer, LLP, and Kelly H. Dove, Las Vegas,
for Appellants.

Law Office of Hayes & Welsh and Larson A. Welsh, Henderson,
for Respondent Archon Firearms, Inc.

Semenza Kircher Richard and Christopher D. Kircher and Katie L. Cannata, Las Vegas,

for Respondents Arsenal Firearms Ltd., AF Pro Tech Group KFT, and Arsenal Firearms USA, LLC.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, LEE, J.:

It is clear from our caselaw that a nonsignatory to a contract containing an arbitration clause can be compelled to participate in arbitration under ordinary principles of agency and contract. We have yet to consider, however, whether that nonsignatory can be compelled to participate in arbitration by another nonsignatory. We conclude that, under circumstances where the nonsignatory seeking to compel arbitration demonstrates both the right to enforce the contract and that compelling another nonsignatory to arbitration is warranted under standard principles of contract law or estoppel, compelling arbitration is appropriate. We therefore reverse the district court's order as to appellants' first motion to compel arbitration, which concluded otherwise, and remand for the district court to consider whether the moving nonsignatory party in this case can demonstrate the conditions needed to compel the opposing nonsignatory party to arbitration. And based on the considerations outlined in this opinion for when a nonsignatory party can compel arbitration or be compelled to arbitrate, we reverse the district court's order as to appellants' second motion to compel arbitration and remand for the district court to determine whether a binding arbitration agreement exists involving the various nonsignatories.

SUPREME COURT
OF
NEVADA

(O) 1947A

## FACTS AND PROCEDURAL HISTORY

In 2017, Arsenal Firearms Ltd. (Arsenal) and RUAG Hungarian Ammotec, Inc. (RUAG-Hungary) entered into three agreements for the manufacture and distribution of a pistol designed by Arsenal: an assembly agreement, a supply chain agreement, and a wholesale agreement (collectively, the RUAG-Arsenal Contracts). Each of the agreements identified RUAG-Hungary and Arsenal as the only parties to the agreements, and each contained identical arbitration provisions providing that the party seeking judicial relief "shall apply for arbitration" and "[a]ll disputes arising out of or in connection with the present Agreement shall then be finally settled under the Rules of Arbitration of the International Chamber of Commerce."

After executing the RUAG-Arsenal Contracts, Arsenal and other entities within its corporate family allegedly contracted with Arsenal Firearms North America Corp. (Arsenal-North America) for Arsenal-North America to be the exclusive distributor of the pistol in the United States. Arsenal-North America then allegedly assigned its distribution rights to respondent Archon Firearms, Inc. (Archon). Purportedly, Arsenal Firearms was rebranded as Archon to avoid a potential trademark dispute.[1]

RUAG-Hungary later sent letters to Arsenal terminating the RUAG-Arsenal Contracts. Archon then filed a complaint alleging 11 causes of action against several RUAG and Arsenal entities. Specifically, the RUAG defendants were RUAG-Hungary, RUAG Ammotec GmbH (RUAG-Germany), RUAG Ammotec USA (RUAG-USA), RUAG Holding AG (RUAG-

---

[1]It is unclear from the record to which Arsenal Firearms entity this allegation refers.

Holding), and RUAG Schweiz AG (RUAG-Schweiz). The Arsenal defendants were Arsenal, AF Pro Tech Group KFT (AF-PTG), and Arsenal Firearms USA, LLC (Arsenal-USA). In the initial complaint, Archon alleged that the RUAG defendants failed to manufacture the number of pistols promised and that the pistols that *had* been manufactured required repairs to make them merchantable. Archon's complaint directly referenced oral and/or written contracts entered into around 2017 between the RUAG and Arsenal defendants for the manufacture and sale of the pistol, and Archon requested declaratory relief that it was an intended third-party beneficiary of the contracts. Additionally, Archon alleged that it foreseeably relied on the contracts and suffered damages as a result of the purported breach.

Subsequently, Archon filed an amended complaint. Among other things, the amended complaint removed the breach-of-contract cause of action and the declaratory relief cause of action, and it omitted allegations that Archon was a third-party beneficiary of the contracts.[2] RUAG-Germany moved to dismiss or stay the action and compel arbitration with Archon under the RUAG-Arsenal Contracts (the first motion to compel arbitration). Although RUAG-Germany was a nonsignatory to the RUAG-Arsenal Contracts, it maintained that it could compel Archon, another nonsignatory, to arbitrate under the instruments because RUAG-Germany was an agent of RUAG-Hungary,[3] a signatory, and because it was a third-

---

[2]The amended complaint also removed RUAG-Schweiz as a defendant.

[3]RUAG-Hungary was dismissed for lack of personal jurisdiction at the same time the district court considered the first motion to compel arbitration.

party beneficiary of the contracts. RUAG-Germany also argued that Archon's claims related to or arose from obligations imposed under the RUAG-Arsenal Contracts and that Archon received a direct benefit from the contracts. The district court denied the first motion to compel arbitration because neither RUAG-Germany nor Archon were parties to the RUAG-Arsenal Contracts.

The Arsenal defendants filed an answer to Archon's amended complaint and asserted seven crossclaims against the RUAG defendants. During the pending litigation and before RUAG-Hungary was dismissed for lack of personal jurisdiction, RUAG-Hungary and RUAG-Germany entered into a settlement agreement with Arsenal, AF-PTG, and nonparty Arsenal Collection s.r.o. (the Settlement Agreement). The Settlement Agreement provided the following:

> Subject to the duties under this Agreement, the Parties shall consider to be fulfilled by this Agreement all existing obligations, rights and claims arising from the [RUAG-Arsenal Contracts] and from all orders related to the mentioned agreements and the Pistols. There are no further claims and rights from one Party to the other and all disputed points and claims in connection with their business relationship to the Pistols are regarded as finally settled.

Like the RUAG-Arsenal Contracts, the Settlement Agreement also contained language that, should a party want judicial relief, the party "shall apply for arbitration," and "[a]ll disputes arising out of or in connection with this Agreement shall then be finally settled under the Rules of Arbitration of the International Chamber of Commerce." Following execution of the Settlement Agreement, the Arsenal defendants filed amended crossclaims,

SUPREME COURT
OF
NEVADA

(O) 1947A

5

maintaining claims for equitable or implied indemnity and contribution against the RUAG defendants.

The RUAG defendants moved to dismiss or stay the crossclaims and to compel the Arsenal defendants to arbitrate under the RUAG-Arsenal Contracts and the Settlement Agreement (the second motion to compel arbitration). The district court denied the second motion to compel arbitration, relying in part on the fact that three of the parties were not part of the Settlement Agreement (Arsenal-USA, RUAG-Holding, and RUAG-USA) and on its conclusion that the crossclaims fell outside the scope of the Settlement Agreement. The RUAG defendants appeal the district court's orders denying both the first and second motions to compel arbitration.

## DISCUSSION

We are presented with a legal question not previously considered by this court: whether a nonsignatory to a contract containing an arbitration clause can compel another nonsignatory to participate in arbitration pursuant to the contract. In answering that question, we must keep in mind our state's "fundamental policy favoring the enforceability of arbitration agreements." *Uber Techs., Inc. v. Royz*, 138 Nev., Adv. Op. 66, 517 P.3d 905, 908 (2022) (internal quotation marks omitted). And because the RUAG-Arsenal Contracts and the Settlement Agreement involve interstate commerce, our analysis is governed by the Federal Arbitration Act (FAA) and Supreme Court precedent that interprets the FAA. *Id.*; *U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 186, 415 P.3d 32, 38 (2018) (quoting 9 U.S.C. § 2). We review de novo the district court's denial of a motion to compel arbitration. *See Royz*, 138 Nev., Adv. Op. 66, 517 P.3d at 908.

"Under the FAA, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Id.* at 909 (internal quotation marks omitted). "Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (internal quotation marks omitted). However, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quotation marks omitted); *see also El Jen Med. Hosp. v. Tyler*, 139 Nev., Adv. Op. 36, 535 P.3d 660, 666 (2023) ("[N]onsignatories to an agreement subject to the FAA may be bound to an arbitration clause when rules of law or equity would bind them to the contract generally." (quoting *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009))). And courts must apply state law in determining whether these "traditional principles . . . allow a contract to be enforced by or against nonparties to the contract." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation marks omitted). Therefore, in considering whether a nonsignatory can enforce an arbitration clause against another nonsignatory, we rely on the substantive law of this state.

*First motion to compel arbitration*

The first motion to compel arbitration was premised on arbitration clauses in the RUAG-Arsenal Contracts. The arbitration clauses in the RUAG-Arsenal Contracts incorporated the International Chamber of Commerce (ICC) Rules of Arbitration. ICC Rules, Article 6(3) states in relevant part, "[i]f any party against which a claim has been made . . . raises one or more pleas concerning the existence, validity or scope

of the arbitration agreement . . . the arbitration shall proceed and any question of jurisdiction . . . shall be decided directly by the arbitral tribunal." Thus, the arbitration agreements included a delegation provision. *See Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (concluding the incorporation of the ICC Rules is clear evidence that the parties delegated questions of arbitrability to the arbitrator). "A delegation [provision] is 'an agreement to arbitrate threshold issues concerning the arbitration agreement . . . such as *whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.*'" *Royz*, 138 Nev., Adv. Op. 66, 517 P.3d at 909 (emphasis added) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Where threshold questions of arbitrability are delegated to an arbitrator, "a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. ___, ___, 139 S. Ct. 524, 529 (2019); *see also Royz*, 138 Nev., Adv. Op. 66, 517 P.3d at 909-10.

Although the arbitration clauses in the RUAG-Arsenal Contracts include a delegation provision, the factual circumstances give us pause about whether the court, not an arbitrator, should determine if RUAG-Germany, a nonsignatory, can compel another nonsignatory, Archon, to arbitration. Courts appear split on whether an arbitration agreement's enforceability as to a nonsignatory is an arbitrability question delegable to an arbitrator. *Compare Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020) (concluding "the arbitrator should decide for itself whether [the nonsignatory] can enforce the arbitration agreement" based on incorporation of a delegation clause), *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017)

Supreme Court
OF
Nevada

(O) 1947A

8

(determining that incorporated delegation clause applied to claims against nonsignatories), *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (concluding that whether an arbitration provision could be used to compel arbitration between a nonsignatory and a signatory was a threshold question of arbitrability subject to delegation), *and De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 797 (S.D. Ohio 2019) (deciding that "[w]hether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause" that could be delegated), *with Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) (holding the court "must decide whether [the nonsignatory] can enforce the . . . arbitration agreement; not an arbitrator" and "[w]hen a court decides whether an arbitration agreement exists, it necessarily decides its enforceability between parties"), *and QPro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) ("When, as here, the issue is whether a nonsignatory to an arbitration clause may enforce it against a signatory, the courts have viewed that as a matter for the court to decide.").

We are persuaded that the issue is one of contract formation that must be decided by the courts in the first instance. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 879 (6th Cir. 2021) (collecting Supreme Court cases and concluding issues regarding the formation of a contract are always for the courts to decide, even where "a delegation provision purports to require arbitration" of such issues). Where a nonsignatory is involved in a motion to compel arbitration under a contract, there is a question as to the very *existence of an agreement involving the nonsignatory.* *See Schoenfeld v. Mercedes-Benz USA, LLC*, 532 F. Supp. 3d 506, 510 (S.D. Ohio 2021) (concluding that nonsignatory

SUPREME COURT
OF
NEVADA

(O) 1947A

9

and signatory "never agreed to arbitrate *any* claims that might arise between them"); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632 (Tex. 2018) ("The question is not whether [the signatory] agreed to arbitrate with someone, but whether a binding arbitration agreement exists between [the signatory] and the [nonsignatory]."). And it remains with the courts to decide whether such an agreement exists. *See Henry Schein*, 586 U.S. at ___, 139 S. Ct. at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 n.4 (5th Cir. 2019) ("[*Henry Schein*] did not change—to the contrary, it reaffirmed—the rule that courts must first decide whether an arbitration agreement exists at all."); *see also Am. Builder's Ass'n v. Au-Yang*, 276 Cal. Rptr. 262, 265 (Ct. App. 1990) ("The question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance."). For "[e]ven the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022); *see also Jody James Farms*, 547 S.W.3d at 632 (holding that, even where a delegation provision has been incorporated, "questions related to the existence of an arbitration agreement with a non-signatory are for the court, not the arbitrator"). Therefore, the district court properly considered whether RUAG-Germany, a nonsignatory, could compel another nonsignatory, Archon, to arbitration pursuant to the RUAG-Arsenal Contracts.

In *Truck Insurance Exchange v. Palmer J. Swanson, Inc.*, we held a nonsignatory may be obligated to arbitrate "if so dictated by the ordinary principles of contract and agency." 124 Nev. 629, 634, 189 P.3d

656, 660 (2008) (quotation marks omitted). In that case, we listed five theories for binding a nonsignatory to an arbitration agreement: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* at 634-35, 189 P.3d at 660 (internal quotation marks omitted). Therefore, under established Nevada caselaw, a nonsignatory to an arbitration agreement can be obligated to arbitrate if one of the five theories is satisfied.

We likewise conclude these same five theories should be used to determine whether a nonsignatory has the right to enforce an arbitration agreement. *See Arthur Andersen*, 556 U.S. at 631 ("[T]raditional principles of state law allow a contract to be enforced *by or against* nonparties to the contract . . . ." (emphasis added) (internal quotation marks omitted)); *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 42-43 (1st Cir. 2012) (same); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories."); *Ross v. Am. Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007) ("[W]e have recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement . . . ."); *Int'l Paper v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 416-17 (4th Cir. 2000) ("Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties."); *see also Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs. Inc.*, 7 F.4th 555, 563 (7th Cir. 2021) ("Illinois courts have reasoned that, if nonsignatories may be *bound* to arbitrate under [theories of contract], then it would follow as a corollary that the same types of theories could afford a basis for a

SUPREME COURT
OF
NEVADA

(O) 1947A

11

nonsignatory to *invoke* an arbitration agreement signed by others." (quoting *Equistar Chems., LP v. Hartford Steam Boiler Inspection & Ins. Co. of Conn.*, 883 N.E.2d 740, 747-48 (Ill. App. Ct. 2008))). Therefore, if a nonsignatory seeking to compel arbitration can establish a right to enforce the contract under any one of these theories, it has shown a right to enforce the arbitration agreement within the contract.

Although *Truck Insurance Exchange* considered a situation where a signatory sought to compel a nonsignatory, we take the opportunity to clarify that a nonsignatory can be compelled to arbitrate by another nonsignatory after demonstrating both the right to enforce the contract and that compelling another nonsignatory to arbitration is warranted under one of the five theories. We determine such a result is provided for by principles of contract and agency law because, whether it is a signatory or nonsignatory seeking to compel the arbitration, the justification for compelling a nonsignatory to arbitration is the same. Thus, the five theories for binding a nonsignatory to an arbitration agreement apply whether it is a signatory or nonsignatory seeking to compel arbitration.

We also take a moment to address the fifth theory recognized in *Truck Insurance Exchange*: estoppel. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer*, 436 F.3d at 1101 (internal quotation omitted); *see also In re Harrison Living Tr.*, 121 Nev. 217, 223, 112 P.3d 1058, 1061-62 (2005) (recognizing "[e]quitable estoppel functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct"). The test for establishing estoppel depends on whether the theory is being used to bind a nonsignatory to arbitration or whether a nonsignatory is seeking to compel arbitration

based on the theory. If it is the former, we made clear in *Truck Insurance Exchange* that "a nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." 124 Nev. at 636, 189 P.3d at 661 (quoting *Int'l Paper*, 206 F.3d at 418); *see also MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (recognizing the "direct benefit" test for binding a nonsignatory under a theory of estoppel and commenting that "[t]he benefits must be direct—which is to say, flowing directly from the agreement"). We recently expounded upon the direct benefits estoppel doctrine in *El Jen* and stated that "a nonsignatory is not bound to an arbitration agreement simply because its claim relates to a contract containing the arbitration provision," as the doctrine applies only when "the nonsignatory party seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." 139 Nev., Adv. Op. 36, 535 P.3d at 670; *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778-80 (2d Cir. 1995) (holding that a nonsignatory cannot be bound to arbitrate without receiving a direct benefit from, or pursuing a claim integrally related to, the agreement containing the arbitration provision).

If it is the latter scenario—a nonsignatory seeking to compel arbitration based on a theory of estoppel—it is "essential . . . that the subject matter of the dispute [be] intertwined with the contract providing for arbitration." *Sokol Holdings Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008). Although used in a situation where a nonsignatory sought to compel a signatory to arbitration, we adopt the test outlined in *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen*, 556 U.S. at 631. Under that test, a

nonsignatory seeking to compel arbitration can satisfy a theory of estoppel (1) where the claims rely on the terms of the written agreement containing the arbitration provision or "arise out of and relate directly to the written agreement," or (2) where the claims involve "allegations of substantially interdependent and concerted misconduct by both the nonsignatory [seeking to compel arbitration] and one or more of the signatories to the contract." *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005). To ensure the test serves the purpose of equitable estoppel, we understand the second method to require that the allegations be "founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1129.

We acknowledge that "[a]rbitration agreements apply to nonsignatories only in rare circumstances." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003). We also acknowledge that caselaw considering whether a nonsignatory can compel arbitration or whether a nonsignatory can be compelled to arbitrate generally contemplates a scenario where a signatory is involved. But we find no clear requirement that such be the case. *See McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 343-44 (11th Cir. 1984) (requiring a contractor and construction manager to arbitrate, where no written agreement between the two existed but each had an arbitration agreement with the owner, after considering the close relationship of the three entities and of the construction manager's alleged wrongs with respect to his contractual obligations), *abrogated on other grounds by Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011). Rather, the five theories outlined above can be used in accordance with our state law principles of contract and agency, notwithstanding the fact that a signatory

SUPREME COURT
OF
NEVADA

(O) 1947A

14

is not involved. Accordingly, where a nonsignatory to a contract containing an arbitration provision moves to compel another nonsignatory to arbitrate, the nonsignatory seeking to compel arbitration must demonstrate the right to enforce the arbitration agreement and show, in law or equity, that compelling the other nonsignatory to arbitration is warranted. *Cf. D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004) ("The party moving to enforce an arbitration clause has the burden of persuading the district court that the clause is valid.").

Having outlined when a nonsignatory can compel arbitration and when a nonsignatory can be compelled to arbitrate, we turn back to the matter before us—whether RUAG-Germany (a nonsignatory) can compel Archon (a nonsignatory) to arbitration. It is clear from the record that the district court denied the first motion to compel arbitration solely because RUAG-Germany and Archon were nonsignatories to the RUAG-Arsenal Contracts. The district court did not consider or make any findings relevant to whether they nonetheless could be bound by the arbitration agreements under general theories such as agency and equitable estoppel. *See, e.g., Harrison Living Tr.*, 121 Nev. at 222, 112 P.3d at 1061 (holding "[w]hether the party seeking to establish equitable estoppel has met his or her burden is . . . generally a question of fact" for the district court to consider). We therefore reverse the district court's order as to the first motion to compel arbitration and remand for the district court to reconsider that motion consistent with this opinion.

*Second motion to compel arbitration*

The second motion to compel arbitration, where the RUAG defendants sought to compel the Arsenal defendants to arbitrate their crossclaims, was premised in part on the Settlement Agreement. The Settlement Agreement contained a delegation provision identical to those in the RUAG-Arsenal Contracts. Unlike the first motion to compel arbitration, the RUAG defendants sought to compel both nonsignatories *and* signatories to arbitration under the terms of the Settlement Agreement.

With regard to RUAG-Germany, Arsenal, and AF-PTG, the district court erred by denying the motion to compel because those parties signed the Settlement Agreement and the agreement contained a delegation provision. Therefore, the district court was without power to determine threshold questions of arbitrability, such as the scope of the arbitration provision. *See Henry Schein*, 5 U.S. at ___, 139 S. Ct. at 529; *see also Royz*, 138 Nev., Adv. Op. 66, 517 P.3d at 909-10.

As to the nonsignatories to the Settlement Agreement (Arsenal-USA, RUAG-Holding, and RUAG-USA), consistent with our opinion today, it is left to the district court to determine in the first instance whether a binding arbitration agreement involving the nonsignatories exists.[4] We

---

[4]Our opinion does not alter the tenet that, should an arbitration agreement unquestionably exist between the parties that clearly and unmistakably delegates threshold issues of arbitrability to the arbitrator, the question of whether a particular claim falls within the scope of the arbitration is for the arbitrator to resolve. *See Royz*, 138 Nev., Adv. Op. 66, 517 P.3d at 910 (concluding "the district court may not bypass contract language delegating threshold issues to the arbitrator by finding that the arbitration agreement does not apply to the dispute"); *see also CMB*

SUPREME COURT
OF
NEVADA

(O) 1947A

16

therefore reverse the district court's order denying the second motion to compel arbitration and remand the matter for the district court to grant that motion as to the signatories to the Settlement Agreement and to reconsider that motion as to the nonsignatories.

_____, J.
Lee

We concur:

_____, C.J.
Stiglich

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

*Infrastructure Group IX, LP v. Cobra Energy Inv. Fin., Inc.*, 572 F. Supp. 3d 950, 975 (D. Nev. 2021).